HOBBINS and others, Respondents, vs. HANNAN and others, Appellants, and WHITMAN, Commissioner of Insurance, Defendant.

*January 17—March 10, 1925.*

*Insurance: Rating law: Inspection bureau: Action by insurance agents challenging validity of statutes authorizing: Right of agents to relief: Interest of agent in insurance contract: Judicial notice: Function of agent: Redress of public wrong by private remedy.*

1. Courts will take judicial notice that the great bulk of insurance business is initiated and procured through agents or agencies, and that much of that so procured is controlled by and renewed through them, so that in the course of time the agent or agency will succeed in working up a large business.   p. 290.

2. An insurance agent is a party to an insurance contract in the sense that commissions on risks procured by him constitute the profits of his business; but he is not a principal to the contract.   p. 292.

3. One of the principal objects of the rating law, enacted in 1917 (secs. 203.33 to 203.43, Stats.), was to stabilize and make uniform not only rates, but contractual forms and riders, not in violation of the standard form of policy, which might directly or indirectly affect the subject of rates.   p. 293.

4. Since the insurance companies have joined the rating bureau, which is operating under the rating law (and these companies are not contesting the constitutionality of the law), their agents, who are suffering inconvenience and damage by the insurance commissioner's approval and disapproval of forms of policies and riders in the bureau's rule book, have neither sustained nor been threatened with legal injury entitling them to injunctive relief against the enforcement of rules as to such matters.   p. 293.

5. If plaintiffs attained the entire object of this action, they would be vested with no power to write their own forms or riders except as they could coerce their respective principals to allow them to do so, and they are therefore not entitled to the aid of a court of equity to grant them relief.   p. 295.

6. While the general public has an interest in the regulation and control of the insurance business, the business of an insurance agent is primarily a private enterprise, for damage to which, by enforcement of the rules and regulations as to forms of

policies and riders of the state inspection bureau, the agent is not entitled to redress by injunction under the guise of asserting a public right.  p. 297.

7. Parties suffering no legal private injury are not entitled to a private remedy for the redress of a public wrong.  p. 297.

8. The constitutionality of the statute relative to the rating law and the inspection bureau is not considered on this appeal, since the plaintiff agents have no standing in court, the insurance companies are not directly before the court, and the insurance commissioner, while a party to the action, did not appeal.  p. 298.

APPEAL from orders and a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal by the defendants *Hannan,* as chief examiner of the Wisconsin Audit Bureau, and *Nichols,* as manager of the *Wisconsin Inspection Bureau,* from an order restraining such defendants from taking any proceedings to enforce certain rules and regulations as to forms and riders contained in a so-called rule book promulgated by the defendant *Wisconsin Inspection Bureau.*

The complaint, among other things, alleges that the plaintiffs are duly licensed insurance agents in Wisconsin and authorized to effect insurance against the risk of loss or damage by fire, lightning, wind storm, and sprinkler leakage, and other forms of insurance in this state; that the defendant *Hannan* is the chief examiner of the Audit Bureau, a bureau created as the stamping office pursuant to sec. 1946—13, Stats. 1921 (now sec. 203.44); that the defendant *Wisconsin Inspection Bureau* is a rating bureau organized and existing pursuant to secs. 1946—1 to 1946—5, Stats. 1921 (now secs. 203.32 to 203.36), and licensed by the commissioner of insurance in accordance with sec. 1946—4, Stats. 1921 (now sec. 203.35); that the said *Nichols* is the manager of said *Inspection Bureau;* that under secs. 1946—2 to 1946—12, Stats. 1921 (now secs. 203.33 to 203.43), said *Inspection Bureau* is authorized to

fix rates for insurance against risk of loss or damage by fire, lightning, wind storm, and sprinkler leakage in this state, subject to review by the insurance commissioner of such rates and subject to the right of any company to establish its own rate; that no authority is given by law to said *Inspection Bureau* to establish requirements as to the terms and forms of policies of insurance, or riders attached to the same, which shall be used in this state; that said secs. 1946—2 to 1946—12, Stats. 1921 (now secs. 203.33 to 203.43), are unconstitutional if construed to confer upon the *Inspection Bureau* the power to establish rules and regulations fixing the forms and terms of insurance policies and riders attached thereto, on the ground that it would constitute an unlawful delegation of legislative power in the bureau and would amount to an unwarranted interference with freedom of contract; that said rule book contains certain forms of riders among which are the following: Permitting the presence and use, under certain conditions, of gasoline and other explosives; permitting the temporary installation of moving-picture machines in public halls; a work-and-materials permit granting such use of the premises as is usual and incidental in the business as conducted therein, etc. (These forms of rules and riders were substantially disapproved by the commissioner, upon the ground that they were too limited and restricted and did not grant conditions sufficiently broad and liberal to conform to his ideas of what such riders should contain.) Permitting insurance against consequential loss and damage, leasehold interest insurance, rent insurance, and use and occupancy insurance. (These forms in the rule book were not disapproved by the commissioner, but he held that such insurance was not within the field of the rating law and that therefore he could not accept or approve of the same.) A rule or a rider which is optional to the insured, which provides that, in consideration of a reduced rate, "this com-

pany shall be held liable for no greater proportion of any loss than the amount hereby insured bears to —— per cent. of the actual cash value of the property described herein at the time when such loss shall happen." The reduced rate co-insurance clause also contained a provision providing for certain exclusions in the risk, pertaining to certain indestructible materials and structures contained in buildings, and with respect to such co-insurance clause the commissioner ruled that materials and structures so designated as indestructible in this form of the rule were not sufficiently inclusive, and that it should contain other alleged indestructible material and further structures not included in the form. (In lieu of such provisions the commissioner submitted forms conforming to his own ideas of what they should contain, and ordered them substituted in place of those contained in the rule book.)

The complaint further alleges numerous other forms and rules and regulations adopted by said *Inspection Bureau* in addition to those above referred to, and which are contained in the rule book; and that the defendant *Nichols*, as manager of the *Inspection Bureau*, and the defendant *Hannan*, chief examiner of the Audit Bureau, in their representative capacities are endeavoring to enforce all such other and additional rules and regulations and the use of such forms for the purpose of eliminating all competition as to terms and conditions of policies, and for the purpose of compelling those who write or seek insurance to conform to all of the terms and conditions of insurance policies and rates attached thereto as contained in said rule book, and for the purpose of increasing, without just reason or excuse therefor, the compensation received by insurance companies over and above compensation previously charged for the amount of protection given by policies covering all forms of insurance herein mentioned or risks in the state of Wisconsin; that such other rules and regulations above referred to have

been approved and filed by the commissioner, and that the commissioner in approving and filing said rules and regulations was without any authority in law, and that such attempted approving and filing were and are void and of no effect; that under the provisions of sec. 1946—13, Stats. 1921 (now sec. 203.44), all writings of insurance by insurance agents of Wisconsin covering risks of loss or damage by fire, lightning, wind storm, or sprinkler leakage in this state must be reported to the stamping office, and that such section further provides that such stamping office must notify any agent or company writing any such insurance of any violation of secs. 1946—1 to 1946—8, inclusive, Stats. 1921 (now secs. 203.32 to 203.39), with a direction that violations be corrected within fifteen days and satisfactory proof of such correction be given to the stamping office; that the chief examiner of said stamping office must report any such violations not corrected within fifteen days to the commissioner; that the rating law contains provisions under which any violation of the terms thereof is punishable by severe fines and a possible revocation or suspension of the license of the company or the agent guilty of such violations; that sec. 1943*b*, Stats. 1921 (now sec. 203.23), prohibits any insurance company or agent from directly or indirectly entering into any contract or compact for the purpose of maintaining a fixed schedule or schedules of rates, excepting such agreements as are specifically authorized by statute or such as may be filed with and approved by the commissioner of insurance; that since August 1, 1922, the plaintiffs have written and are continuing to write large amounts of insurance covered by a large number of policies issued by plaintiffs for various companies, with riders attached not complying with the rules of said *Wisconsin Inspection Bureau,* where such rules have been disapproved or refused filing by said orders of the commissioner but complying with said orders of said commissioner; that the de-

fendant *Hannan,* as chief examiner of the Wisconsin Audit Bureau, is continuously active in sending notices to the plaintiffs requiring the correction of policies issued by the plaintiffs, upon the ground that said policies do not contain riders complying with the said rules and regulations of said *Inspection Bureau,* including such rules and regulations as have been disapproved of and refused filing by the orders of the commissioner as aforesaid.

Plaintiffs further allege that all of said rules and regulations in said rule book are void; that the commissioner has no power or jurisdiction to order plaintiffs to correct policies to conform to said rules and regulations; that as a result of the sending out of said notices, criticisms, reports, and directions, and the sending out of directions and notices by the insurance commissioner, the insurance business in the state is in a state of confusion; that parties desiring insurance do not know what terms and conditions they are entitled to have incorporated in policies, and the plaintiffs and other agents do not know what limitations and restrictions they may be or are legally subject to in writing insurance; and that such confusion has resulted in large and irreparable loss and damage to the public and to the plaintiffs in the conduct of the insurance business.

Plaintiffs pray for judgment restraining the defendants from sending out said notices, etc., as to any alleged infractions or failures to comply with any of the rules and regulations as to the terms of insurance contracts and riders and clauses to be attached thereto contained in said rule book of said *Wisconsin Inspection Bureau;* and restraining them from any and all acts intended to enforce compliance with said rules and regulations relating to the terms of insurance contracts on the part of plaintiffs and other agents writing insurance in the state of Wisconsin.

A copy of the summons and complaint having been served upon *Nichols,* the manager of the *Inspection Bureau,* the

bureau appeared specially and moved that the action be dismissed as to it, upon the ground that it is not a corporate entity and that therefore jurisdiction will not obtain over it. The court granted this motion. The defendant *Nichols* demurred generally to the complaint; also upon the ground that there is a defect of parties and a misjoinder of causes of action. The defendant *Hannan* served a verified answer.

For the appellants there were briefs by *Olin & Butler* of Madison, attorneys, and *Ernest H. Hicks* of Chicago, of counsel, and oral argument by *H. L. Butler* and *B. H. Stebbins* of Madison.

For the respondents there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *H. M. Wilkie.*

For the defendant *Whitman* there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

DOERFLER, J. The plaintiffs are licensed insurance agents, and as such represent numerous insurance companies authorized to do business in this state. It is a well known fact, of which the court can take judicial notice, that the great bulk of the insurance business is initiated and procured through the instrumentality of agents or agencies; that a large part of the insurance so procured is controlled by the agents, and upon the expiration of policies is renewed through them, so that in the course of time an insurance agent or an agency, by reason of such renewals and procuring of new risks, succeeds in working up a large and lucrative business. Under the practices thus established and maintained, an insurance agent becomes a vital factor in the insurance field, and he is recognized as such by the statutes upon the subject, which require him to obtain a license and which declare that he shall be deemed to have a financial interest in the conduct of the insurance business and in matters coming up before the insurance department for review.

The plaintiffs, as such insurance agents, contend that the rating bureau has no authority in law to establish uniform rules and riders, but that in the performance of its legitimate functions it is confined to the establishment of uniform rates of insurance; that if the rating law is construed in a manner as to authorize the bureau to establish and maintain uniform forms and riders, that then the act is unconstitutional, for the reason that it provides for an unlawful delegation of legislative power and because it interferes with the constitutional provision which guarantees the right of freedom of contract. They also maintain that the insurance commissioner has no authority in law to approve or disapprove such forms and riders, and that if the statutes be construed that the legislature has attempted to grant such power, the grant amounts to an unlawful delegation of legislative power and is for that reason void; that the insurance commissioner is a mere administrative officer, clothed with the duty under the statute to fix what he deems a reasonable and non-discriminatory rate of insurance, and that he is authorized to enforce such administrative power as to rates, and as to rates only; that the field of drafting forms of policies not inconsistent with the standard form of riders belongs to the companies and the agents at the present time, substantially to the same degree as it existed prior to the enactment of the rating law in 1917; that the notices sent out by the stamping office containing criticisms and corrections of forms and riders, and the threats issued by such officer to report failures to comply with such notices to the insurance commissioner, and the provisions of the statutes under which such alleged violations may be penalized by fines, are an unlawful interference with the legal rights of the companies and of the agents to write their own contractual forms and riders, and that such acts and threats have resulted in demoralizing the entire insurance business in the state of Wisconsin, and particularly that represented by the plaintiffs, and that it has thrown the business of the

plaintiffs into utter confusion and so entangled the same as
to cause them great and irreparable loss; and in order to
remedy the situation they have sought relief in the present
equitable action to enjoin the defendants from sending out
such notices and criticisms and from reporting alleged viola-
tions to the commissioner, and from their penalization by
the commissioner under the provisions of the statutes.

This in brief presents in concrete form the theories of the
plaintiffs as set forth in their complaint, and at the very
threshold of the issues so presented we are confronted with
the vital question (assuming that all that is contended by the
plaintiffs in their complaint is true) whether they present
a situation which entitles them to the relief prayed for or
any relief whatsoever.

In every insurance contract of the nature involved herein
there are interested, first, the companies issuing the policies;
second, the assured, for whose protection the policy is issued;
and third, the insurance commissioner, with administrative
power to fix and maintain a reasonable and non-discrimina-
tory rate.   In the fixing and maintenance of such rate the
commissioner represents the public interests.   The insurance
agent is interested in a financial way in all policies procured
by him as an agent of the company.   The commissions on
risks procured by him constitute the profits of the agent's
or agency's business.   In this sense, and this only, is the
insurance agent a party to an insurance contract.   But in
no sense can it be deemed that the agent occupies the position
of a principal.   The very term "agent" in itself would refute
such a contention.   The profits, if any, ensuing from the
assumption of an insurance risk belong to the company, and
it is in consideration solely of valuable services performed
for the company that the latter consents to the payment of
a part of the premium to the agent.   It is undeniably true
that in the past the drafting of special forms of riders has
been to some extent permitted to rest with the agent, and

Hobbins v. Hannan, 186 Wis. 284.

that the ingenuity of an agent in drafting forms has in many
instances acted persuasively in procuring risks for the com-
pany.   That such permission is granted by companies to the
agents is largely due to the tremendous power wielded by
them in the field of insurance, so that as a matter of business
policy many companies have acceded to the forms and
riders promulgated by the agents.   Indeed, any one familiar
with insurance practices as they existed prior to 1917 must
realize that this great power of insurance agents or agencies,
particularly those who have built up large patronages, acted
coercively on the companies, and caused the latter in many
instances to yield; for after all, an insurance company is
organized for profit, and where loss of profits is threatened
a yielding and compromise are likely to result.

It thus appears to the writer quite clearly that one of the
principal objects and purposes of the enactment of the rat-
ing law by the legislature in 1917 was to stabilize and make
uniform not only rates, but contractual forms and riders,
not in violation of the standard form of policy, which
directly or indirectly might affect the subject of rates.

But merely assuming that the rating law, when given a
proper construction, authorizes the bureau to establish and
maintain uniform forms and riders, and that such law is
unconstitutional for the reasons claimed by the plaintiffs,
that it constitutes an unconstitutional delegation of legis-
lative power to the bureau and interferes with the consti-
tutional provision guaranteeing the right of freedom of
contract, nevertheless, under the provisions of the statutes,
the companies have joined these rating bureaus and have
elected a chief examiner, are operating under the rating law,
and are not now here claiming or contesting the constitution-
ality of the law.   The companies have therefore declared
their position, have established themselves as component
parts of the rating bureau, and operated under the law, and
they are the principals in the writing of every insurance

risk.   It is an anomaly in the law to contend that the agent has rights (unless specifically created by contract) superior to the rights of the principal, or to contend that the agent can dictate the manner in which the principal shall do his business, or that the principal is bound in any respect to submit to the dictates of the agent or to be in any way subservient to him.   If the principal yields, he does so for policy's sake, not because there is a vested right in the agent to compel him so to do.

So that while it must be conceded, under the allegations of the complaint, that the plaintiffs, by reason of the things which have transpired since the adoption of the rule book by the bureau and the approval of the bulk of the forms therein contained by the commissioner, the disapproval of some, and his rulings as to others, have suffered inconvenience and damage, nevertheless the injury so sustained and that threatened is not a legal injury for which they are entitled to relief in this action.   The resulting injury to the plaintiffs is a consequence arising from their failure to do that and to comply with that which their principals have established in an effort to conduct the insurance business in accordance with their own standards.   Unless they are willing to comply with the terms and conditions created by their principals, the only alternative offered to the plaintiffs is to discontinue their agencies and to seek other fields of employment.

The history of insurance legislation in this state is clearly set forth in the affidavit of the defendant *Nichols,* filed herein.   The abuses which existed prior to the enactment of the rating law, under which the forms of riders attached to policies varied in accordance with the number of the companies writing insurance risks and the caprices of numerous agents, are all fully set out in such affidavit, and these facts are matters of common knowledge.   The coercive methods of the agents controlling large volumes of insurance business is also referred to, and it is averred that such measures

have been resorted to frequently by agents in the past. Whether that be true or not we will not determine; however, it must be admitted that the indiscriminate writing of riders and forms to be attached to insurance policies creates a situation where such coercive methods can readily be applied, and insurance agents are human beings and are subject to all the weaknesses of mankind when it comes to the gratification of selfish motives.

With the assumption that the rating law contemplates the establishment of uniform forms and riders and that such statute is unconstitutional, and the further assumption that it was intended by the legislature to grant to the commissioner full power to disapprove of any and all submitted forms and riders and that such portion of the law is also unconstitutional, the plaintiffs and all other agents could then write only such forms and riders as are promulgated or approved by their companies, and the agents would not be vested with any powers whatsoever to write their own forms and riders; so that, even if the entire object of this litigation be attained by the plaintiffs, they would be in no better position, from the standpoint of right, than they are at the present time, except only that by reason of the control which they have of large volumes of business procured by them as agents they would be in a position whereby they could coerce their principals. To create such a situation they have no standing in a court of equity, and are not entitled to the aid of the strong arm of such court to grant them relief. So that it would logically follow from what has heretofore been said, that whether the law in the respects above mentioned be constitutional or not, or whether in the attempt to create uniform rates the laws of this state have been violated, nevertheless it becomes the duty of the agents to use either the forms and riders prescribed by the bureau or those provided by the individual companies, and any injury which they might suffer by the acts of the bureau or of the

companies does not constitute legal injury for which relief can be granted.

Are the plaintiffs in the instant case asserting a public right? The writing of insurance risks on fire and other kindred casualties is so common that it may be truly said that the great majority of people in this state owning property take out insurance against such risks. The general public has an interest in the regulation and control of the insurance business that is not unlike that which it has in public utilities. This fact forms the basis of the public enactments which created the standard policy form, the office of the insurance commissioner, with power to fix and enforce a reasonable and non-discriminatory rate, and all other legislation upon the subject. It is recognized that the insurance agent must obtain a license, that he is deemed to have a financial interest in the subject of insurance, and that his acts are to some degree subject to control as provided for by the statutes. But his business primarily is a private enterprise, and he engages in it solely for profit. By the complaint an equitable action was attempted to be stated and relief sought for an invasion of plaintiffs' private rights. Note particularly the allegations wherein the existing confusion in the insurance business is referred to; also the alleged state of uncertainty in the writing of policies to cover insurance hazards, the inconvenience to the plaintiffs and other agents, and the resulting alleged irreparable damage; and while the plaintiffs assume the attitude of champions of the public right, in reality they seek redress for an alleged private injury. The confusion existing in the business, and all the other alleged inconveniences and damage charged, do not follow as the result of a compliance by the plaintiffs with the terms of their employment with their respective companies, but from a direct violation thereof. Briefly stated, the plaintiffs have by their own acts largely created the unfavorable situation which now exists, and then appeal

to a court of equity for relief from the results which have transpired as the result of their acts. Under such circumstances, how can a court of equity be successfully appealed to for relief? Let the insurance agents comply with the law, which is evidently recognized as valid by the companies, and they will then to a large extent relieve the situation; or, on the other hand, if the conduct of the business of insurance agents under such circumstances is distasteful to them and is not conducive to the kind of competition which they desire, they are at liberty at any time to terminate their employment and seek some other form of remunerative business.

Plaintiffs having suffered no legal private injury, they cannot appeal to the court for the vindication of a public right. 22 Cyc. 757; *Income Tax Cases,* 148 Wis. 456, 521, 134 N. W. 673, 135 N. W. 164. In the *Income Tax Cases, supra,* it is said in a dissenting opinion:

"Generally speaking, the law does not give a private remedy for the redress of a public wrong. One damaged or threatened by an unlawful act which affected him only as it affected that section of the public holding the same legal relation to such act, could not at common law or in equity maintain an action against the doer of such act. And it mattered not that his damages were greater. If they were of the same nature and differed only in degree the wrong was still a public wrong. The rule has been applied in a great variety of cases in this court."

In support of this quotation from the *Income Tax Cases* follows a citation of fifteen different cases in this court, so that the doctrine thus relied upon has been firmly established in the decisions of Wisconsin.

It follows from the foregoing that the plaintiffs have suffered no legal injury, and that "the law does not give them a private remedy for the redress of a public wrong." 32 Corp. Jur. 34; *Linden L. Co. v. Milwaukee E. R. & L.*

*Co.* 107 Wis. 493, 83 N. W. 851.   The order of the circuit ·
court granting the injunction must therefore be reversed.

It is strongly urged by the learned counsel for the appel-
lants that we decide this case upon the merits.   We have
given this considerable thought, and to say the least are
extremely doubtful whether we can or ought to comply with
this request.   Plaintiffs have no standing in court, for the
reasons above stated.   The insurance companies are pri-
marily interested in the constitutionality of the questions
involved, but are not before the court excepting in so far as
they are represented by the officers of the bureaus of which
the companies are members.   The insurance commissioner
and the public are vitally interested, because the questions
raised not only involve the bureau but the rights of the
commissioner.   While the insurance commissioner is a
party to the action, he did not appeal from the decision of
the trial court and is therefore not properly before the court.
Under these circumstances we cannot, as we deem it, com-
ply with the request of counsel.

*By the Court.*—The order of the lower court is reversed,
and the cause is remanded with directions to dismiss the
complaint.