WISCONSIN POWER & LIGHT COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION and another, Respondents.

*No. 18. Argued November 26, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 639.)

For the appellant there were briefs by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *Eugene O. Gehl,* all of Madison.

For the respondent Public Service Commission the cause was argued by *William E. Torkelson,* chief counsel, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent city of Richland Center there was a brief by *Roberts, Boardman, Suhr & Curry,* and oral argument by *Richard L. Olson,* all of Madison.

HANLEY, J. The following issues are presented on this appeal:

(1) Was the PSC order granting Richland Center's application for permission to construct facilities to connect to the Dairyland system in violation of sec. 196.495 (1), Stats.; and

(2) Is appellant a person whose "legal rights, duties or privileges" are "directly affected" within the meaning

of sec. 227.15, Stats., or a "person aggrieved" and "directly affected" within the meaning of sec. 227.16 (1), so as to be entitled to a review in the circuit court of the PSC's order?

*Applicability of Sec. 196.495 (1), Stats.*

In its simplest form the appellant's position is that sec. 196.495 (1), Stats., is applicable to wholesale sales of electric energy and that Richland Center and Dairyland are thus prohibited from constructing additional facilities, unless the conditions of that section are fulfilled. The respondents (Richland Center and PSC) contend that the prohibition of the section applies only to those providing energy at retail.

Sec. 196.495 (1), Stats., states:

"(1) No public utility, and no co-operative association organized under ch. 185 for the purpose of furnishing electric service to its members only, shall (a) extend or render electric service *directly or indirectly to the premises of any person* already receiving electric service directly or indirectly from another public utility or another such co-operative association, or (b) make a primary voltage extension to serve the premises of any person not receiving electric service and to which such service is available from the facilities of another public utility or another such co-operative association through a secondary voltage extension, unless the other public utility or co-operative association consents thereto in writing or unless the public service commission after notice to the interested parties and hearing finds and determines that the service rendered or to be rendered by such other public utility or co-operative association is inadequate and will not likely be made adequate, or that the rates charged therefor are unreasonable and are not likely to be made reasonable." (Emphasis supplied.)

The appellant's contention as to the interpretation of this section focuses on the words "directly or indirectly to the premises of any person" and is apparently twofold.

In challenging the propriety of the respondents' proposed facilities as being duplicative of its 1952 and 1962 facilities the appellant asserts that: (1) If "premises" is interpreted to include the facilities of another public utility, it is, by virtue of its wholesale sales to Richland Center, servicing such premises "directly," and (2) if "premises" is interpreted to mean premises of an ultimate consumer—residents and inhabitants of Richland Center—it is, by virtue of its wholesale sales to Richland Center, servicing such ultimate consumers "indirectly."

Acceptance of either of these contentions would render the duplication of the appellant's wholesale facilities within the proscription of the statute. In support of its contention that such is the purpose of the statute, the appellant maintains that since the statute does not specifically refer to either retail or wholesale sales, it must be construed in accordance with the underlying purpose of the public utilities law.

This underlying purpose, in the appellant's view, is to eliminate unnecessary duplication between supplies and the resulting economic waste. It thus contends that no reason exists for distinguishing between retail and wholesale supplies. Although this court stated in *Wisconsin Traction, Light, Heat & Power Co. v. Menasha* (1914), 157 Wis. 1, 8, 145 N. W. 231, that one of the main purposes of the law was to avoid duplication, it also stated that the reason for such avoidance was to benefit the *consumer* through the resulting economies in production. *See also Calumet Service Co. v. Chilton* (1912), 148 Wis. 334, 135 N. W. 131, and 18 Marq. L. Rev. (1934), 80. Thus, we think that the predominant purpose underlying the public utilities law is the protection of the consuming public rather than the competing utilities. As such this underlying purpose gives little assistance to the appellant's interpretation of the phrase "directly or indirectly to the premises of any person."

Returning to the appellant's first alternate interpretation of "premises" it appears its contention is that the 7,500 KVA substation, to which Dairyland's lines will connect, constitute "premises" within the meaning of sec. 196.495 (1), Stats. An examination of the section, however, reveals that employed therein is also the phrase "facilities of another public utility." This, we believe, negates the possibility of interpreting "premises" to include facilities such as Richland Center's substation and indicates that "premises" was intended to mean "premises of the consuming public." Had the legislature intended to include "facilities" within the term "premises," it could have specifically so indicated.

Under the appellant's second alternate interpretation of "premises" it is contended that, by virtue of its wholesale sales to Richland Center, it is "indirectly" serving the consuming public. This court, however, has held that wholesale sales to a municipality do not constitute "indirect" sales to the public. In *Central Wisconsin Power Co. v. Wisconsin Traction, Light, Heat & Power Co.* (1926), 190 Wis. 557, 209 N. W. 755, the city of Clintonville had for several years purchased power at wholesale and distributed it to its inhabitants. When the city attempted to change suppliers, the original wholesale supplier asserted that it possessed an indeterminate permit which foreclosed the city from purchasing power from a different supplier. In determining whether the original wholesaler was possessed of an indeterminate permit, this court was called upon to determine whether wholesale sales to the city constituted indirect service to the public. In determining this question in the negative the court stated:

". . . Manifestly, the plaintiff dealt with the public in no respect whatever. If it can be said under such an arrangement as was here entered into between the city of *Clintonville* and the plaintiff that the plaintiff furnished light, heat, and power to the public indirectly, that would be equally true of a coal dealer who erected a

coal chute for the purpose of delivering coal to the generating plant owned by the city. The statute expressly declares that a city owning and operating an electrical plant such as the city of *Clintonville* owned and operated is a public utility, so that we have in this case one public utility dealing with another. . . ." (p. 567.)

It thus appears that neither the policy underlying the public utilities law nor the actual wording of sec. 196.495 (1), Stats., require such statute's application to facilities used in wholesale sales of energy.

Since sec. 196.495 (1), Stats., is not applicable to the instant case, the appellant is merely in the position of one who by reason of expenditures for facilities has a financial interest in the application of Richland Center. In *Milwaukee v. Public Service Comm.* (1960), 11 Wis. 2d 111, 104 N. W. 2d 167, such financial interest was held to be insufficient to render one an "aggrieved party" with standing to contest another's application to expand facilities. There the city of Milwaukee had been supplying water at wholesale to several other municipalities which then distributed it to their residents. When these municipalities applied to the PSC for permission to construct their own intake and supply systems, this court held that its previous expenditures on facilities necessary for its service to these municipalities did not render it an "aggrieved party" within the meaning of secs. 227.15 and 227.16.

A like decision was rendered in *Wisconsin Hydro Electric Co. v. Public Service Comm.* (1940), 234 Wis. 627, 291 N. W. 784.

We conclude that the trial court was correct in holding that sec. 196.495 (1), Stats., does not apply to the instant case and that appellant lacks standing to contest the PSC order granting the application of Richland Center.

*By the Court.*—Order affirmed.