WISCONSIN'S ENVIRONMENTAL DECADE, INC., Appellant,
v. PUBLIC SERVICE COMMISSION OF WISCONSIN and
another, Respondents.*

*No. 490. Argued February 5, 1975.—Decided June 16, 1975.*
(Also reported in 230 N. W. 2d 243.)

---

\* Motion for rehearing denied, without costs, on September 30,
1975.

1

2

For the appellant there was a brief and oral argument by *Melvin L. Goldberg* of Madison.

For the respondent Public Service Commission there was a brief by *Robert W. Warren*, attorney general, and *William E. Torkelson*, chief counsel to the Public Service Commission, and oral argument by *Steven M. Schur*, assistant attorney general.

For the respondent Public Service Corporation there was a response brief by *Foley & Lardner, Steven E. Keane, Paul M. Barnes* and *Allen W. Williams, Jr.*, all of Milwaukee, and oral argument by *Mr. Williams*.

WILKIE, C. J.   The single narrow issue before us on this appeal is whether the petition for review or the proposed amendment thereto in the circuit court action commenced by the appellant-petitioner, Wisconsin Environmental Decade, Inc. (WED), states facts that show it is aggrieved and directly affected by the decision of the respondent, Public Service Commission of Wisconsin (PSC), sought to be reviewed under secs. 227.15 and 227.16 (1), Stats.  The trial court ruled against the petitioner and we reverse, remanding the case for further proceedings, and holding that, if the facts are true, then the petitioner has standing to commence the action which it brought in circuit court.

These proceedings grow out of a June 29, 1971, order of the PSC placing limitations on the sale of natural gas by the intervening respondent, Wisconsin Public Service Corporation.  The PSC directed the corporation to place in effect limitations on the sale of natural gas as follows:

"Limit the sale of gas to new residential, commercial or industrial customers or increase loads to existing residential, commercial or industrial customers to no more than 2,500 therms per day, 50,000 therms per month, or 250,000 therms per year."

Two years later, on May 14, 1973, the corporation made application to the commission for an order authorizing the corporation to establish a priority system placing

restrictions on the end use of natural gas in accordance with the requirements adopted by the United States Federal Power Commission. The proposed priority system, eventually adopted by the PSC in an order of August 20, 1973, provided:

"To conserve the company's natural gas supply for the highest priority of firm use, the company may limit or deny the sale of gas to new customers and to existing customers requesting additional gas when the company concludes said supply is not adequate to provide service to all customers in any one of the following priority groups:

"*First Priority Group:*

"The use of natural gas for any purpose where the total use does not exceed 150,000 therms per year.

"*Second Priority Group:*

"The use of natural gas for any purpose except boiler or prime mover fuel up to 500,000 therms per year.

"*Third Priority Group:*

"The use of natural gas for any purpose except boiler or prime mover fuel in excess of 500,000 therms per year but less than 1,500,000 therms per year.

"*Fourth Priority Group:*

"The use of natural gas by any customer for boiler or prime mover fuel in excess of 150,000 therms per year and for any purpose in excess of 1,500,000 therms per year."

WED intervened in the hearings on the proposed order and requested that the commission make a study of appropriate alternatives to the proposed action pursuant to the requirements of sec. 1.11 (2) (e), Stats.,[1] and further

---

[1] "1.11 **Governmental consideration of environmental impact.** . . .

"(2) All agencies of the state shall: . . .

"(e) Study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources . . . ."

requested that the following conditions be incorporated into the first proposed priority group:

"After January 1, 1974, no new Rg–1 or Rg–2 service shall be extended unless prospective customers first submit a verified statement from an architect or engineer licensed under Chapter 443, Wis. Stats., certifying that the dwelling to receive service complies with the 'Minimum Thermal Insulation Requirement for New Single Family Residences' shown in sheet No. ―――."

Both requests of the WED were denied by the commission. WED filed a petition for rehearing which was also denied by the commission by order dated September 14, 1973. Then in Dane county circuit court WED filed a petition for judicial review under ch. 227, Stats., of both the August 20th and the September 14th orders of the commission.

The petition alleged in substance that WED was a nonprofit, nonstock corporation primarily engaged in public interest activities intended to maintain and improve the quality of the human and natural environment. The petition further alleged that WED had members who were residential users of natural gas in the area to be affected by the activities of the corporation; the name and address of three such members were listed. The petition then continued:

"6. That, in the natural gas restriction proceedings before respondent which culminated in the orders sought to be reviewed herein, petitioner asserted its interest and the interest of its members, which it continues to assert in this review proceeding, to-wit petitioner's interest and the interest of all petitioner's members and their descendants in the careful husbandry of the rapidly dwindling energy resources of our state, nation and planet, an interest threatened by an authorization to restrict the use of natural gas which fails to curb wanton and wasteful use of the limited supplies remaining.
". . .

"8. That petitioner and petitioner's members, whose interests petitioner asserts herein, are directly affected and aggrieved by the orders sought to be reviewed herein because:

"a. Said orders harm the environment by prematurely devouring the last, dwindling reserves of natural gas, and by encouraging environmentally destructive practices such as strip mining to artificially and temporarily augment the supply of natural gas via coal gasification.

"b. Said orders unduly discriminate against their responsible use of natural gas in the future by allowing present profligate users of natural gas to prematurely exhaust the finite supply remaining."

Both the PSC and the corporation moved the circuit court to dismiss the petition on the ground that it failed to state facts sufficient to meet the requirements of secs. 227.15 and 227.16 (1), Stats., and that, therefore, WED was not a proper party to bring the action under those sections.

Prior to the hearing on the motions to dismiss, WED filed a proposed amendment to the petition which contained two additional allegations as to injury, as follows:

"6A. That petitioner, on its own behalf, and on behalf of its members, has interests in a healthful environment, an interest threatened by this order which induces lower priority natural gas customers to switch to more environmentally damaging alternative sources of energy."

and

"8. c. Said orders have the effect of inducing low priority natural gas customers to rely more heavily on more environmentally damaging alternative sources of energy."

Judgment dismissing the petition was entered on January 11, 1974, and the reasons for the dismissal were stated to be:

". . . that petitioner is not a person aggrieved whose legal rights, duties or privileges are directly affected by

the orders of respondent Public Service Commission sought to be reviewed herein within the meaning of section 227.15, Wis. Stats., and that it is not a person aggrieved or directly affected by said orders within the meaning of section 227.16 (1), Wis. Stats. . . ."

The threshold question raised on this appeal concerns the function and effect of a motion to dismiss in a ch. 227, Stats., review proceeding. Sec. 227.19 (3) recognizes the motion to dismiss as a pleading that challenges whether a petition on its face states "facts sufficient to show that the petitioner named therein is aggrieved and directly affected by the decision sought to be reviewed." In numerous cases this court has treated the motion to dismiss as equivalent to a general demurrer to a petition asserted to contain insufficient allegations to comply with the standing requirements of both secs. 227.15 and 227.16.[2] We hold, therefore, that the motions to dismiss filed by the PSC and the corporation in the instant case raise the question whether the petition alleges facts sufficient to show that WED has standing. In evaluating a ch. 227 motion to dismiss, the trial court as well as this court on appeal, should apply the normal rules relating to demurrers, including but not limited to the rules that the allegations of the petition are assumed to be true; that the allegations are entitled to a liberal construction in favor of the petitioner; and that this court is not con-

---

[2] *Pasch v. Department of Revenue* (1973), 58 Wis. 2d 346, 206 N. W. 2d 157; *Universal Org. of M. F., S. & A. P. v. WERC* (1969), 42 Wis. 2d 315, 166 N. W. 2d 239; *Ashwaubenon v. Public Service Comm.* (1963), 22 Wis. 2d 38, 125 N. W. 2d 647; *Tyler v. State Department of Public Welfare* (1963), 19 Wis. 2d 166, 119 N. W. 2d 460; *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. 2d 514, 55 N. W. 2d 40; *United R. & W. D. S. E. of A. v. WERB* (1944), 245 Wis. 636, 15 N. W. 2d 844. *See also: Estate of Becker* (1972), 56 Wis. 2d 356, 202 N. W. 2d 681; *Wisconsin Hydro Electric Co. v. Public Service Comm.* (1940), 234 Wis. 627, 291 N. W. 784; *Schlitz Realty Corp. v. Milwaukee* (1933), 211 Wis. 62, 247 N. W. 459.

cerned with the ability of the petitioner to prove the facts alleged at trial.[3]

Standing to seek review of an administrative decision of the PSC is governed by both secs. 227.15 and 227.16 (1), Stats.[4] Sec. 227.15 provides in pertinent part:

> **"Judicial review; orders reviewable.** Administrative decisions, which directly affect the legal rights, duties or privileges of any person . . . shall be subject to judicial review as provided in this chapter . . . ."

Sec. 227.16 (1) provides in pertinent part:

> **"Parties and proceedings for review.** (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 and directly affected thereby shall be entitled to judicial review thereof as provided in this chapter. . . ."

We have held that a person must be "aggrieved" and "directly affected" by the agency decision, and also that the decision must "directly affect the legal rights, duties or privileges" of the person seeking review.[5] Secs. 227.15 and 227.16 do not, however, create separate and independent criteria. It is clear that both sections essentially require the petitioner to show a direct effect on his legally protected interests. Thus, in *Greenfield v. Joint County School Comm.*[6] a person aggrieved is defined as

---

[3] *Lorenz v. Dreske* (1974), 62 Wis. 2d 273, 214 N. W. 2d 753; *Estate of Lease* (1974), 62 Wis. 2d 230, 214 N. W. 2d 418; *Weiss v. Holman* (1973), 58 Wis. 2d 608, 207 N. W. 2d 660.

[4] *Milwaukee v. Public Service Comm.* (1960), 11 Wis. 2d 111, 104 N. W. 2d 167.

[5] *Wisconsin Power & Light Co. v. Public Service Comm.* (1969), 45 Wis. 2d 253, 172 N. W. 2d 639; *Ashwaubenon v. Public Service Comm.* (1963), 22 Wis. 2d 38, 125 N. W. 2d 647; *Milwaukee v. Public Service Comm.* (1960), 11 Wis. 2d 111, 104 N. W. 2d 167; *Lodi Telephone Co. v. Public Service Comm.* (1952), 262 Wis. 416, 55 N. W. 2d 379, 57 N. W. 2d 700.

[6] (1955), 271 Wis. 442, 447, 73 N. W. 2d 580.

"one having an interest recognized by law in the subject matter which is injuriously affected by the judgment."

The Wisconsin rule of standing envisions a two-step analysis conceptually similar to the analysis required by the federal rule. The first step under the Wisconsin rule is to ascertain whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law. This approach is similar to the two-pronged standing analysis outlined by the United States Supreme Court in *Data Processing Service v. Camp*[7] and *Barlow v. Collins*[8] as follows: (1) Does the challenged action cause the petitioner injury in fact? and (2) is the interest allegedly injured arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question?[9] In the area of environmental law particularly, the new federal test has been viewed as a substantial liberalization of the standing requirements.[10] An allegation of injury in fact to aesthetic, conservational and recreational interests has been readily accepted as sufficient to confer standing.[11] Moreover, the federal courts have shown a willingness to find that environmental interests are arguably within the zone of interest protected by virtually any statute

[7] (1970), 397 U. S. 150, 90 Sup. Ct. 827, 25 L. Ed. 2d 184.

[8] (1970), 397 U. S. 159, 90 Sup. Ct. 832, 25 L. Ed. 2d 192.

[9] *Data Processing Service v. Camp, supra,* footnote 7, at page 153.

[10] *See:* Davis, *The Liberalized Law of Standing,* 37 U. of Chi. L. Rev. (1970), 450; Large, *Is Anybody Listening? The Problem of Access in Environmental Litigation,* 1972 Wis. L. Rev. 62, 94 *et seq.*

[11] *United States v. SCRAP* (1973), 412 U. S. 669, 93 Sup. Ct. 2405, 37 L. Ed. 2d 254; *Sierra Club v. Morton* (1972), 405 U. S. 727, 92 Sup. Ct. 1361, 31 L. Ed. 2d 636; *Data Processing Service v. Camp, supra,* footnote 7; *Citizen's Committee for Hudson Valley v. Volpe* (2d Cir. 1970), 425 Fed. 2d 97; *Scherr v. Volpe* (D. C. Wis. 1971), 336 Fed. Supp. 882.

relating to environmental matters.[12] Perhaps more important, these courts have recognized that the National Environmental Protection Act (NEPA) arguably provides protection for a broad range of environmental interests.[13] The federal law of standing is not binding on Wisconsin,[14] but recent federal cases are certainly persuasive as to what the rule should be.[15]

Despite the similarity of conceptual analysis of the state and federal rules, the respondents contend that, in practice, the Wisconsin rule has been applied with relative strictness except in cases involving the public trust doctrine relating to navigable waters.[16] The cases relied upon by the corporation and the PSC do not, however, show as strict an application of the standing requirement as is suggested. In the main, cases in which review has been denied have been grounded on the notion that the statute relied upon by the person seeking review did not give legal recognition to the interest asserted and thus have rested upon statutory interpretation rather than the law of standing itself. For example, in *Mortensen v. Pyramid Savings & Loan Asso.*,[17] relied upon by the

[12] *See: Environmental Defense Fund, Inc. v. Hardin* (D. C. Cir. 1970), 428 Fed. 2d 1093 (Federal Insecticide, Fungicide, and Rodenticide Act); *West Virginia Highlands Conservancy v. Island Creek Coal Co.* (4th Cir. 1971), 441 Fed. 2d 232 (Multiple Use-Sustained Yield Act, and Wilderness Act); *Citizen's Committee for Hudson Valley v. Volpe, supra,* footnote 11 (Department of Transportation Act, The Hudson River Basin Compact Act).

[13] *United States v. SCRAP, supra,* footnote 11, at page 686, note 13; *West Virginia Highlands Conservancy v. Island Creek Coal Co., supra,* footnote 12; *Scherr v. Volpe, supra,* footnote 11.

[14] *See, e.g., Wisconsin Coal Bureau, Inc. v. Public Service Comm.* (1944), 244 Wis. 435, 447, 12 N. W. 2d 743.

[15] *See: Mortensen v. Pyramid Savings & Loan Asso.* (1971), 53 Wis. 2d 81, 191 N. W. 2d 730.

[16] *See: Daly v. Natural Resources Board* (1973), 60 Wis. 2d 208, 208 N. W. 2d 839; *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. 2d 514, 55 N. W. 2d 40.

[17] (1971), 53 Wis. 2d 81, 191 N. W. 2d 730.

respondents, this court held that the statute setting forth the duties and responsibilities of the commissioner of savings and loan did not protect the commissioner's personal interest in seeing his official decisions affirmed by the savings and loan review board. A similar rationale was applied by this court in a line of cases concerning whether the applicable statutes recognized an interest in being free from competition.[18]

In *Dressler v. WERB*,[19] a discharged employee was held unable to seek review of an order of the WERB dismissing the complaint of his union against the employer alleging violations of the collective bargaining contract. The court held the employee had no standing because he was not a party to the contract and had failed even to apply to be joined as a party in the board proceeding. The court indicated, however, that a different result might have been reached if either of these factors had been present.

In *Ashwaubenon v. State Highway Comm.*,[20] also relied on by the PSC, the court considered whether a town located near a highway, ordered to be relocated, could seek judicial review of the relocation order of the state highway commission. The court questioned the town's standing not because its interests were not affected, but

---

[18] *Compare: Wisconsin Power & Light Co. v. Public Service Comm.* (1969), 45 Wis. 2d 253, 172 N. W. 2d 639; *Milwaukee v. Public Service Comm.* (1960), 11 Wis. 2d 111, 104 N. W. 2d 167; *Wisconsin Coal Bureau, Inc. v. Public Service Comm.* (1944), 244 Wis. 435, 12 N. W. 2d 743; *Wisconsin Hydro Electric Co. v. Public Service Comm.* (1940), 234 Wis. 627, 291 N. W. 784, *with: Hall v. Banking Review Board* (1961), 13 Wis. 2d 359, 108 N. W. 2d 543; *Lodi Telephone Co. v. Public Service Comm.* (1952), 262 Wis. 416, 55 N. W. 2d 379, 57 N. W. 2d 700. *See also: United R. & W. D. S. E. of A. v. WERB* (1944), 245 Wis. 636, 15 N. W. 2d 844, concerning not a narrow application of the standing doctrine, but rather the reviewability of an order that affected no one's interests.

[19] (1959), 6 Wis. 2d 243, 94 N. W. 2d 609, 95 N. W. 2d 788.

[20] (1962), 17 Wis. 2d 120, 115 N. W. 2d 498.

rather because of doubts about whether one unit of government should be able to seek judicial review of what the court found to be a quasi-legislative ruling by another unit of government concerning what is in the public interest. Significantly, this court reached the merits of the case, thus holding, implicitly, that the town did have standing.

We conclude that the law of standing in Wisconsin should not be construed narrowly or restrictively. This court has held that the review provisions of ch. 227, Stats., are to be liberally construed.[21] As Professor Kenneth Culp Davis has commented:

> "The only problems about standing should be what interests deserve protection against injury, and what should be enough to constitute an injury. Whether interests deserve legal protection depends upon whether they are sufficiently significant and whether good policy calls for protecting them or for denying them protection."[22]

The first question to be determined on this analysis of WED's standing in the instant case is whether the petition alleges injuries that are a direct result of the agency action.

The petition, as amended, alleges that the order in question causes harm: (a) By prematurely devouring natural gas reserves preventing future availability, and (b) by inducing lower priority customers to rely on more environmentally damaging sources of fuel.[23] The re-

---

[21] *Kubista v. State Annuity and Investment Board* (1950), 257 Wis. 359, 43 N. W. 2d 470.

[22] Davis, *Administrative Law Treatise* (1970 Supp.), p. 722, sec. 22.00–4.

[23] The petition also alleges that the order will encourage environmentally destructive practices such as strip mining. However, there is nothing in the allegation from which it could be inferred that WED or its members would be injured by such activity.

spondents contend these alleged injuries are speculative and remote and cannot be construed as being directly caused by the order in question. On the other hand, WED contends that "directly affected," as used in sec. 227.16 (1), Stats., includes injuries that are brought about because of a series of events initiated by the agency action in question and that the injuries alleged here qualify. We agree.

This court and the federal courts have taken a similar view of the directness requirement. Injury alleged, which is remote in time or which will only occur as an end result of a sequence of events set in motion by the agency action challenged, can be a sufficiently direct result of the agency's decision to serve as a basis for standing. The question of whether the injury alleged will result from the agency action in fact is a question to be determined on the merits, not on a motion to dismiss for lack of standing.

The second question in the analysis of petitioner's standing here is whether the interest asserted is recognized by law. WED asserts that its interest in preventing the use of environmentally dirty fuels by the lower priority customers is an interest legally recognized because of the navigable waters public trust doctrine as developed by this court.[24] But here the allegations of the petition, even as amended and liberally construed, fail to assert an interest with regard to the preservation or protection of navigable waters or any related interest which has been previously recognized by this court. While WED makes a strong argument in its brief that navigable waters will be injuriously affected, the petition itself fails to even mention navigable waters or any

[24] *Daly v. Natural Resources Board* (1973), 60 Wis. 2d 208, 208 N. W. 2d 839; *Just v. Marinette County* (1972), 56 Wis. 2d 7, 201 N. W. 2d 761; *Muench v. Public Service Comm.* (1952), 261 Wis. 2d 492, 53 N. W. 2d 514, 55 N. W. 2d 40.

injury thereto. As the petition does not raise the issue on its face, the public trust doctrine is unavailable as a basis for standing. We are unwilling to adopt a rule that any allegation of harm to the environment raises, by implication, an allegation of harm to navigable waterways.

WED also contends that the asserted interest in conservation of natural gas so that it will be available for future users is a legally recognized interest under various provisions of ch. 196, Stats. WED relies particularly on: (1) Sec. 196.03, which charges every utility with the responsibility of furnishing reasonably adequate service; (2) sec. 196.20, which requires a hearing and written approval of the PSC before any change to a rule will be permitted which purports to curtail the obligation or undertaking of service; and (3) sec. 196.26 (1), which permits customer complaints on the ground that a regulation or practice of the utility renders service insufficient or inadequate, and which requires an investigation by the commission and a public hearing; (4) sec. 196.37 (2), which requires the PSC to make reasonable regulations whenever it shall find that a regulation or practice of the utility is insufficient or preferential or that any service is inadequate, or that any service which can reasonably be demanded cannot be obtained; and (5) sec. 196.62, which prohibits a utility from giving any unreasonable preference or advantage to any person. WED argues that these statutes are designed to protect the rights of the customers to receive and, by implication to continue to receive in the future, adequate and not insufficient service. As noted above, WED's petition alleges that three of its members are natural gas customers in the area affected.

The respondents contend that ch. 196, Stats., does not by its terms require that the PSC assure that adequate reserves of the various fuels required to produce energy

will be available in the future. It is further asserted that the PSC cannot presume to act unless that power is expressly conferred upon it by statute.[25]

The rule that an administrative agency, being a creature of statute, is limited in its powers to those expressly delegated by the legislature, permits the exercise of power which arises by fair implication from the express powers.[26] We conclude that the power to regulate so that the rules and practices of the utilities do not render service inadequate or insufficient raises by fair implication the power to regulate so that service will remain as reasonably adequate and sufficient in the future as is practicable. This court has recognized that the public utilities law is designed to benefit the consuming public. In *Wisconsin Power & Light Co. v. Public Service Comm.*[27] this court stated:

". . . Thus, we think that the predominant purpose underlying the public utilities law is the protection of the consuming public rather than the competing utilities."

This express recognition of the protective purposes of the law distinguishes this case from other cases where the court has held that a person seeking standing was not within the zone of protected interests of the applicable statute.[28]

---

[25] *Mid-Plains Telephone v. Public Service Comm.* (1973), 56 Wis. 2d 780, 202 N. W. 2d 907.

[26] *Id.* at page 786.

[27] *Wisconsin Power & Light Co. v. Public Service Comm.* (1969), 45 Wis. 2d 253, 259, 172 N. W. 2d 639.

[28] *Compare: Wisconsin Power & Light Co. v. Public Service Comm.* (1969), 45 Wis. 2d 253, 172 N. W. 2d 639; *Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. 2d 120, 115 N. W. 2d 498; *Milwaukee v. Public Service Comm.* (1960), 11 Wis. 2d 111, 104 N. W. 2d 167; *Hobbins v. Hannan* (1925), 186 Wis. 284, 202 N. W. 800; *with: Norway v. State Board of Health* (1966), 32 Wis. 2d 362, 145 N. W. 2d 790; *Ashwaubenon v. Public Service Comm.* (1963), 22 Wis. 2d 38, 125 N. W. 2d 647; *Lodi Telephone*

Our conclusion is that WED's members, who are customers in the area affected by the PSC's order in this case, have a sufficient interest under the cited sections of ch. 196, Stats., in the future adequacy of their service, and that WED has standing, if the facts alleged in the petition are true, to challenge the PSC's failure to consider conservation alternatives to the proposed priority system.

WED also contends that the Wisconsin Environmental Protection Act (WEPA) recognizes the interests asserted with regard to the protection of the environment from the harmful effects of burning fuels other than natural gas. WED would have this court hold that WEPA establishes a new public trust in the entire environment.

WEPA was created by ch. 274, Laws of 1971, sec. 1 of which contained the following statement of legislative purposes:

"SECTION 1. LEGISLATIVE PURPOSE. (1) The purposes of this act are to declare a policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate 'the health and welfare of man; and to enrich the understanding of the important ecological systems and natural resources.

" (2) The legislature, recognizing the profound impact of man's activity on the interrelations of all components of the natural environment, . . . declares that it is the continuing policy of this state, in cooperation with other governments, and other concerned public and private organizations, to use all practicable means and measures, . . . in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations.

Co. v. Public Service Comm. (1952), 262 Wis. 416, 55 N. W. 2d 379, 57 N. W. 2d 700.

"(3)  In order to carry out the policy set forth in this act, it is the continuing responsibility of this state to use all practicable means, consistent with other essential considerations of state policy, to improve and coordinate plans, functions, programs, and resources to the end that the state may:

"(a)  Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

"(b)  Assure safe, healthful, productive, and aesthetically and culturally pleasing surroundings;

"(c)  Attain the widest range of beneficial uses of the environment while attempting to minimize degradation, risk to health or safety, or other undesirable and unintended consequences;

"(f)  Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

"(4)  The legislature recognizes that each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment."

Despite the clear import of this statement of legislative purpose, it is contended by the respondents that as a mere preamble to the act, it cannot have any substantive legal effect.[29]

It is doubtful whether the preamble rises to the level of establishing a public trust comparable to the public trust in navigable waters such that any harm to the environment is presumed to harm the interests of any citizen of the state.  On the other hand, the preamble of an act is instructive of legislative intent,[30] and as such it must be considered that the legislature intended to recognize the rights of Wisconsin citizens to be free from the harmful effects of a damaged environment where it can be shown that the person alleging injury resides in the area most likely to be affected by the agency action in question.  Such is the situation in the instant case.  The

[29] *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. 2d 770.
[30] *Id.*

petition not only alleges that the PSC's action will result in environmental harm because of increased use of environmentally dirtier fuels, but also that members of WED reside in the area affected. From these allegations it is reasonable to infer that members of WED will breathe the air and will be injured if its quality is impaired.

As previously noted, the federal courts, applying the "zone of interests" test, have found in NEPA a sufficient recognition of the interests in protecting the environment to serve as a basis for standing to challenge an agency's failure to comply with its provisions.[31] It is our conclusion that WEPA, while not creating a public trust analogous to the public trust in the navigable waters of the state, does, similar to NEPA, recognize an interest sufficient to give a person standing to question compliance with its conditions where it is alleged that the agency's action will harm the environment in the area where the person resides.

WED is asserting more than the general interest of the citizens of Wisconsin in seeing their laws properly executed. WED has alleged injury to the environmental interests of its members who live in the affected area and injury to the interests of its members, who are customers of the corporation, to continue to enjoy adequate and sufficient service through the conservation of natural gas. We conclude that these interests are sufficiently protected under the relevant statutes that WED has standing to seek review of the PSC's actions in this case. The respondents contend that WED does not have standing to represent its members where the allegations of injury relate solely to the members' individual inter-

[31] *United States v. SCRAP* (1973), 412 U. S. 669, 93 Sup. Ct. 2405, 37 L. Ed. 2d 254; *West Virginia Highlands Conservancy v. Island Creek Coal Co.* (4th Cir. 1971), 441 Fed. 2d 232; *Scherr v. Volpe* (D. C. Wis. 1971), 336 Fed. Supp. 882.

ests. We are of the opinion, however, that an organization devoted to the protection and preservation of the environment has standing to sue in its own name if it alleges facts sufficient to show that a member of the organization would have had standing to bring the action in his own name.[32]

We conclude, therefore, that the petition, as amended, does state facts which, if true, give the petitioner standing to attack the PSC order. We therefore reverse and remand to the trial court for a preliminary determination of the truth of the facts pertaining to standing alleged in the petition, as amended. Standing would exist upon a showing that the priority system adopted will result in more environmental damage or greater depletion of natural gas resources than an alternative system including, for example, a different priority grouping, or conservation measures. WED must also show that one or more of its members live in the area whose air quality or natural gas supply would be adversely affected. If the established facts support any of the bases for standing alleged in the petition, the trial court should then consider the merits of the appropriate issues in WED's petition.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

---

[32] *United States v. SCRAP, supra,* footnote 31; *Sierra Club v. Morton* (1972), 405 U. S. 727, 92 Sup. Ct. 1361, 31 L. Ed. 2d 636; *Sierra Club v. Leslie Salt Co.* (D. C. Cal. 1972), 354 Fed. Supp. 1099; *cf. Cobb v. Public Service Comm.* (1961), 12 Wis. 2d 441, 107 N. W. 2d 595.