130 Wis.2d 56 (1986)
387 N.W.2d 245
MILWAUKEE BREWERS BASEBALL CLUB, a Wisconsin limited partnership, Milwaukee Brewers Baseball Club, Inc., Raymond Elwood Jackson, and Ray Jackson's, Inc., Petitioners-Respondents,
v.
The Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES, Appellant.
No. 85-0855.
Supreme Court of Wisconsin.
Argued November 25, 1985.
Decided May 12, 1986.
*58 For the appellant the cause was argued by Robert W. Larsen, assistant attorney general, with whom on the briefs was Bronson C. La Follette, attorney general.
For the petitioners-respondents there was a brief by David E. Beckwith, Michael A. Bowen, Leonard G. Leverson and Foley & Lardner, Milwaukee, and oral argument by Mr. Beckwith.
DAY, J.
This case comes to us on bypass of the court of appeals and is an appeal from the order of the circuit court of Milwaukee county, Honorable Clarence *59 R. Parrish, holding that the Milwaukee Brewers Baseball Club, et. al. (Petitioners) had standing to challenge the Wisconsin Department of Health and Social Services' (Department's) Final Environmental Impact Statement (FEIS) and that the FEIS was inadequate in respect to its consideration of alternative prison sites and in respect to the possible environmental impacts on the Petitioners. Petitioners conduct business at or near the proposed prison site.[1] The entrance to the proposed site is across the street from one of the main entrances to Milwaukee County Stadium's parking lot, a distance of approximately one hundred feet. This appeal is not concerned with the constitutionality of the prison legislation nor with the wisdom or necessity of placing the prison in the Menomonee Valley. The issues presented on appeal are: (1) Did the Petitioners have standing to bring an action seeking review of the administrative decision determining the FEIS to be adequate, if so, (2) Was the FEIS adequate? We conclude that the Petitioners did have standing to challenge the adequacy of the FEIS. Because we conclude in Milwaukee Brewers Baseball Club, et al. v. Wisconsin Department of Health and Social Services, et al., (case no. 85-0164), 130 Wis.2d 79, 387 N.W.2d 254 (majority opinion at 83), that 1983 Wis. Act 27, sec. 2020 (32m)(f), which forbids the Department from holding a contested case hearing on the FEIS, violates the Wisconsin *60 Constitution's guarantee of equal protection and is therefore stricken, we do not decide the issue of the adequacy of the FEIS, and remand the case to the circuit court with directions to remand to the Department for a contested case hearing on the disputed issues "of material fact." Accordingly, we affirm in part and reverse in part, and remand the case to the circuit court.
"Prison overcrowding has been a problem in this state since the mid-1970's." Fox v. DHSS, 112 Wis. 2d 514, 519, 334 N.W.2d 532 (1983).[2] In response to this critical problem, the legislature included prison siting legislation in the 1983 Executive Budget Bill, 1983 Wis. Act 27 (the Act). The Act took effect on July 1, 1983. Though the legislature reaffirmed its commitment to the Wisconsin Environmental Policy Act (WEPA), in the Act, it stated that the issue of prison siting necessitated an "expedited environmental review" and required the "direct action of the legislature in establishing the site for any new metropolitan correctional institution." 1983 Wis. Act 27, sec. 2020(32g)(b). Accordingly, the legislature selected the Menomonee Valley in the City of Milwaukee as the site for the proposed prison. Section 46.05(1o) (a), Stats.[3] To further expedite the planning, *61 design and construction of the proposed prison, the legislature established a timetable for the Department's preparation and release of an environmental impact statement. 1983 Wis. Act 27, sec. 2020(32m)(g). Furthermore, the Act authorized state agencies to engage in preliminary activities, such as land acquisition and architectural planning, concurrent with the Department's preparation of the environmental impact statement. 1983 Wis. Act 27, sec. 2020(32m)(c).
The firm of Camp Dresser & McKee, Inc. was hired by the Department to prepare the environmental impact statement. A preliminary environmental impact statement was submitted to the Department for comment on October 31, 1983. A draft of the environmental impact statement was distributed in December, 1983, and a public hearing on the statement was held in Milwaukee on January 4, 1984. Public comments were received by the Department for two weeks following the hearing. These comments were considered during the preparation of the FEIS. The FEIS was distributed in April, 1984, and a public hearing was held in Milwaukee on September 13, 1984. Written comments were received for nearly a month following the hearing.
On December 18, 1984, the secretary of the Department, Linda Reivitz, issued her Record of Decision finding *62 that the construction of the prison in the Menomonee Valley would "not have a detrimental effect on the environment" and that "any adverse effects can be mitigated through corrective action." The decision stated that the project should proceed as proposed by the legislature.
Petitioners sought judicial review of the Department's decision in the Milwaukee County Circuit Court, pursuant to ch. 227, challenging the adequacy of the FEIS and moved to stay the construction of the proposed prison until the Department filed a FEIS in compliance with WEPA. The Act provided that if there were any defects in compliance with WEPA or the Act, the project could not be enjoined unless the petitioner "proves by clear and convincing evidence that any defects ... cannot be remedied during the construction phase of the project." Section 46.0435(3), Stats. The Department filed a motion to dismiss for lack of standing. In a memorandum decision and order dated February 20, 1985, the circuit court concluded that the Petitioners had standing and granted them a temporary injunction, which restrained and enjoined the Department from commencing construction on the prison, while dismissing the Department's motion. In a memorandum decision and order dated April 30, 1985, the circuit court concluded that the FEIS failed to comply with WEPA, sec. 1.11. The court remanded the case to the Department to take corrective action and issued an injunction which prohibited further construction of the Menomonee Valley prison project pending compliance with sec. 1.11.
The Department appealed the April 30th decision of the circuit court to the court of appeals. A petition to bypass the court of appeals was filed by the Department. *63 This court dismissed the bypass petition as premature because briefs on the appeal had not been filed. A second petition for bypass was filed by the Department on July 12, 1985. This court granted the bypass on September 13, 1985, with the condition that it be considered in the same month as Milwaukee Brewers Baseball Club, et al. v. Wisconsin Department of Health and Social Services, et al. (case no. 85-0164), 130 Wis 2d 79, 387 N.W.2d 254 (1986).[4]
The first issue on appeal is whether the Petitioners have standing to challenge the Department's decision that the FEIS was adequate. The standing issue was examined by this court in Fox. In Fox, the petitioners sought judicial review of the Department's decision that the FEIS, prepared on two potential maximum security prison sites in the Portage area, met the requirements of WEPA.
*64 Sections 227.15 and 227.16(1), Stats.,[5] control the issue of standing to seek judicial review of an administrative decision. In Wisconsin, the law of standing is to be construed liberally. Wisconsin's Environmental *65 Decade, Inc. v. PSC, 69 Wis. 2d 1, 13, 230 N.W.2d 243 (1975) (hereinafter WED I). "Where an actual injury is demonstrated, even a `trifling interest' may be sufficient to confer standing." Fox, 112 Wis. 2d at 524.
This court applies a two-step test to determine standing. The first step is to determine "whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law." WED I, 69 Wis. 2d at 10. Step one, the direct injury requirement, has two components. First, the injury must not be hypothetical or conjectural. Second, there must be a close causal relationship between the alleged injury and a change in the physical environment. Fox, 112 Wis. 2d at 532. In the area of environmental law, the alleged injury is not limited to a physical or economic one; allegations of injury to aesthetic, conservational, recreational, health and safety interests will confer standing so long as the injury is caused by a change in the physical environment. Metropolitan Edison v. People Against Nuclear Energy, 460 U.S. 766, 771-773 (1983); Joseph v. Adams, 467 F. Supp. 141, 156 (E.D. Mich. 1978); Fox, 112 Wis. 2d at 525.
In addition to showing a direct injury, the Petitioner must show that the alleged injury is an injury to a legally protected interest. This court has determined that the legislature intended WEPA to protect citizens from the harmful effect of a damaged environment "where it can be shown that the person alleging the injury resides in the area most likely to be affected by the agency action in question ... [and] ... where the agency's action will harm the environment where *66 the person resides." Fox, 112 Wis. 2d at 531 (emphasis in original); see also, WED I, 69 Wis. 2d at 18-19.
Petitioners allege that physical proximity to the affected area will confer standing under WEPA. They rely on the following language from Fox for this proposition: "[T]he intervenors ... are Portage area residents whose property is immediately adjacent to the site chosen for the new prison.... It is clear that had the intervenors been petitioners, they would have had standing under WEPA to bring an action challenging Stanchfield's decision that the FEIS was adequate." Fox, 112 Wis. 2d at 534-535. Both the Brewers and Raymond Elwood Jackson work in the immediate vicinity of the prospective prison. Therefore, the Petitioners allege that, like the Fox intervenors, they clearly have standing to challenge the FEIS deficiencies.
The Department contends that the Petitioners lack standing for failure to satisfy either step of the standing test. First, the Department characterizes the Petitioners' "injury" as a fear that the proximity of the prison will discourage fans from attending ball games, thereby jeopardizing their businesses. Subsequently, the Department alleges that the Petitioners have not shown a direct injury because they failed to show a close causal relationship between a change in the physical environment and the behavioral reaction of the fans, since the alleged behavioral reaction is due to the proximity of convicts and not to the building of a prison in the Menomonee Valley.
Second, the Department argues that the Petitioners do not have a legally protected interest, because their alleged "interest" is based on the psychological effects on the fans of having prisoners near Milwaukee County Stadium, an interest discounted in Fox. In Fox, *67 the petitioner's (McCann's) injuries were based on how the inmates at the Portage prison would react to being placed there. This court held:
"McCann's injuries are not causally related to the physical environment. Instead, they flow from the psychological effect on inmates of placing a prison in Portage. While it is true the effects on psychological health can be cognizable under NEPA, [National Environmental Policy Act] Metropolitan Edison,[6] slip opinion at 4, the effects must be related to a change in the physical environment. Here, McCann's injuries flow from the psychological effects and, not from the physical environment. As *68 such they are not injuries to interests protected by WEPA." Fox, 112 Wis. 2d at 530. (Emphasis added.)
Similarly, argues the Department, the Petitioners alleged injuries, loss of business, flow from psychological effects and not from the physical environment, thus, the interests are not protected by WEPA.
In Fox, this court dismissed the petitioners' suit for lack of standing. This court then addressed the issue of whether the intervenors could proceed with their claim despite the dismissal of the petitioners' suit. This court stated that the Saueys (intervenors), who resided on property adjacent to the proposed prison site, would have had standing to challenge the FEIS if they had complied with the filing requirements. Even though the opinion did not expressly apply the standing analysis to the Saueys, it was clear that the Saueys satisfied the two requirements. The Saueys alleged that they were adjoining landowners and that as a direct result of the Department's decision, their interest in their property would be injured by a number of factors, including increased air and noise pollution. These are the type of injuries that WEPA is intended to consider. The intervenors alleged an immediate threat of direct harm to their natural environment as a result of a change in the physical environment. This court in Fox did not alter the two-step test for determining standing. Therefore, the Petitioners, in the present action, must satisfy the two-step test to have standing to challenge the adequacy of the FEIS.
Petitioners allege that construction of the proposed prison will cause the following harm: aggravation of already severe traffic congestion near Milwaukee County Stadium, irrevocable preclusion of a land *69 use which would complement the Brewers' operations, the risk that national guardsmen or state troopers responding to a disturbance at the prison will preempt the primary access road to the stadium's principal east parking lot, erection of a visually displeasing array of guard towers and razor wire, and economic effects flowing from these "environmental" impacts. This court has construed the "directly affected" requirement to include an injury "which is remote in time or which will only occur as an end result of a sequence of events set in motion by the agency action challenged...." WED I, 69 Wis. 2d at 14. It is not the magnitude of the injury that confers standing, but rather the fact that an injury has occurred. There is a close causal connection between the alleged injuries to the Petitioners and the building of the prison in the Menomonee Valley. It is not the psychological effects on the fans of having prisoners in close proximity to the stadium that concerns the Petitioners. They allege that as a result of the prison being constructed in the Menomonee Valley there will be added traffic congestion to already congested highways and that the prison will be aesthetically displeasing, thereby keeping fans away from the stadium. Therefore, the question becomes whether these are legally protected interests.
Allegations of injuries to aesthetic, conservational, environmental, health, and recreational interests have been found to be interests protected by the environmental protection act. Annot., 61 A.L.R. Fed. 87, 91 (1983); Fox, 112 Wis. 2d at 525. The Petitioners have alleged the problem of severe traffic congestion. "[A]utomobile ... traffic ... and the socio-economic consequences of the construction of a prison upon industrial and commercial growth.... [are impacts] typically *70 cognizable under NEPA." Monarch Chemical Works, Inc. v. Exon, 466 F. Supp. 639, 655-656 (D. Neb. 1979); see also, Adams, 467 F. Supp. at 156; Hanley v. Mitchell, 460 F.2d 640, 647 (2nd Cir. 1972), cert. denied, 409 U.S. 990 (1972). Because of the similarity between NEPA and WEPA, this court has relied on federal cases construing NEPA as persuasive authority in construing WEPA. Wisconsin's Environmental Decade v. DNR, 115 Wis. 2d 381, 395, 340 N.W.2d 722 (1983). We are in agreement with the federal courts and conclude that increased traffic congestion is an effect on the physical environment cognizable under WEPA. Therefore, this allegation by the Petitioners is sufficient to acquire standing to challenge the adequacy of the FEIS and we need not consider their other allegations.
The second issue presented on appeal is whether the FEIS is adequate. Petitioners allege that the FEIS is inadequate because: it failed to consider reasonable alternatives to the Menomonee Valley site; its consideration of increased traffic congestion was inadequate; it failed to discuss site-related problems with emergency access response; it failed to discuss the adverse impact associated with placing the proposed prison in one of the hottest and most uncomfortable locales in the State of Wisconsin; it failed to give adequate consideration to the irreversible preclusion of alternative land uses for the proposed prison site; and it failed to adequately consider the economic effects of placing the prison next to Milwaukee County Stadium. Because this court has stricken that portion of the 1983 budget bill which forbade the Department from conducting a contested case hearing on the FEIS in Milwaukee Brewers Baseball Club (case no. 85-0164), 130 Wis. 2d *71 at 83, we remand the case to the circuit court with directions to remand to the Department for a contested case hearing on the disputed issues "of material fact" raised by petitioners. Petitioners have alleged, among other things, that the FEIS is inadequate because it failed to consider reasonable alternatives to the Menomonee Valley site, and it failed to give adequate consideration to the irretrievable preclusion of alternative land uses for the proposed prison site. Section 1.11(2)(c)3 and 5, Stats., provides that the FEIS should include "[a]lternatives to the proposed action" and "[a]ny irreversible and irretrievable commitments of resources which would be involved in the proposed action...." We find that these allegations present questions of law because of this specific site selection by the legislature, and therefore, we address these allegations on this appeal. The other arguments raised by the Petitioners on the issue of the adequacy of the FEIS involve questions of fact to be decided following a contested case hearing.
Section 1.11(2)(c), Stats.,[7] WEPA, delineates what must be included in the FEIS.
*72 "The purpose of an EIS is to enable an agency to take a `hard look' at the environmental consequences of its proposed action. New York, Natural Resources Defense Council, Inc. v. Kleppe, 429 U.S. 1307 (1976). The duty of an agency to prepare an EIS does not require it to engage in remote and speculative analysis. Vermont Yankee Nuclear Power Corporation v. Natural Resources Defense Council, Inc., 435 U.S. 519 (1978). Instead, the statute must be construed in the light of reason. Natural Resources Defense Council, Inc. v. Morton, 458 F.2d 827 (D.C. Cir. 1972)." Wisconsin Environmental Decade v. Public Service Comm., 98 Wis. 2d 682, 690, 298 N.W.2d 205 (Ct. App. 1980).
Petitioners allege that the FEIS failed to consider alternatives to the Menomonee Valley site. In fact, sec. 9.0 of the FEIS stated that the consideration of alternatives was "limited to the adequacy of the designated site and mitigation of adverse impacts...." Petitioners allege that, in the Act, the legislature reaffirmed its commitment to WEPA, 1983 Wis. Act 27, sec. 2020(32g)(b), which requires the FEIS to consider "alternatives to the *73 proposed action." Section 1.11(2)(c)3, Stats. Furthermore, the Petitioners allege that the legislature did not exempt itself from considering alternatives. In response, the Department argues that the legislature statutorily determined where the new prison would be located, sec. 46.05(1o) (a), thereby foreclosing the consideration of alternative sites.
Several courts have found the description of alternatives to be the heart of the environmental impact statement. Environmental Defense Fund, Inc. v. Froehlke, 473 F.2d 346, 350 (8th Cir. 1972); Natural Resources Defense Council, Inc. v. Morton, 458 F.2d 827, 834 (D.C. Cir. 1972); 1-291 Why? Association v. Burns, 372 F. Supp. 223, 247 (D. Conn. 1974), aff'd, 517 F.2d 1077; see also, 40 CFR sec. 1502.14. However, the discussion of alternatives is subject to the rule of reason. Izaak Walton League of America v. Marsh, 655 F.2d 346, 372 (D.C. Cir. 1981), cert. denied, 454 U.S. 1092; Seacoast Anti-Pollution v. Nuclear Regulatory Comm'n., 598 F.2d 1221, 1230 (1st Cir. 1979); Sierra Club v. Adams, 578 F.2d 389, 396 (D.C. Cir. 1978). "When Congress has enacted legislation approving a specific project, the implementing agency's obligation to discuss alternatives in its environmental impact statement is relatively narrow." Walton, 655 F.2d at 372, see also, Adams, 578 F.2d at 396.
Neither party questions the legislature's authority to select a site for the prison. Site selection of a public building is within the province of the legislature. Outagamie County v. Smith, 38 Wis. 2d 24, 39, 155 N.W.2d 639 (1968). "This Court will not interfere with the conduct of legislative affairs in the absence of a constitutional mandate to do so or unless either its procedure or end result constitutes a deprivation of constitutionally *74 guaranteed rights." Outagamie County, 38 Wis. 2d at 41; see also, State ex rel. La Follette v. Stitt, 114 Wis. 2d 358, 369, 338 N.W.2d 684 (1983). The question of deprivation of constitutionally guaranteed rights is not presented by this appeal; it is dealt with in the companion case, Milwaukee Brewers Baseball Club (case no. 85-0164), 130 Wis 2d 79, 387 N.W.2d 254 (1986).
The legislature asserts that prison overcrowding is a critical problem. 1983 Wis. Act 27, sec. 2020(32g)(a). Nevertheless, it has experienced lengthy delays in selecting prison sites and constructing them. Fox, 112 Wis. 2d at 519-523. Therefore, in the same subsection that it reaffirmed its commitment to WEPA, 1983 Wis. Act 27, sec. 2020(32g)(b), the legislature concluded that the "issue of the siting of any new metropolitan correctional institution necessitates an expedited environmental review process and will require the direct action of the legislature in establishing the site for any new metropolitan correctional institution." (Emphasis added.) In order to expedite the construction of a needed prison, the legislature named the Menomonee Valley as the site for the new metropolitan prison. Furthermore, it appropriated $51,500,000 to the project. 1983 Wis. Act 27. The legislature decided to consider environmental factors in designating the site. However, it is clear from the legislation passed, that the legislature intended that the Department conduct the environmental review on the specified site to determine whether the construction of a prison there would have a detrimental effect on the environment. We hold that where the legislature has specified the site for a prison and conditioned its reaffirmation of its commitment to WEPA on its taking *75 direct action in naming a site, the Department need not consider alternative sites. The FEIS summarized the state's efforts to select a prison site and it considered programmatic alternatives to building a prison. This was sufficient under the circumstances.
Petitioners also contend that the FEIS fails to adequately consider the irreversible preclusion of alternative land uses of the proposed prison site. Section 1.11(2)(c)5, Stats., requires environmental impact statements to include a discussion of "[a]ny irreversible and irretrievable commitments of resources which would be involved in the proposed action...." We concur with the Department's conclusion that the legislature intended it to conduct an environmental review solely on the Menomonee Valley site. Therefore, it necessarily follows that there was no reason to consider alternative sites or uses. While the legislature reaffirmed its commitment to consider environmental concerns, it limited the scope of the process by naming the site for the proposed prison. Any consideration of alternative sites and uses was foreclosed by legislative action.
We affirm that part of the circuit court's decision which found that the Petitioners had standing to challenge the adequacy of the FEIS. We reverse that part of the decision that held that the Department had to consider alternative sites, and we also reverse that part of the decision that held that the Department had to consider irreversible and irretrievable commitments of resources arising as a result of the legislatively created prison project. In view of this court's holding in Milwaukee Brewers Baseball Club (no. 85-0164), 130 Wis. *76 2d at 106, that 1983 Wis. Act 27, sec. 2020(32m)(f) violates the Wisconsin Constitution's guarantee of equal protection of law, a contested case hearing is necessary. Therefore, we affirm that part of the circuit court's decision which held that the FEIS was inadequate. We do this not on the merits of the findings made by the Department based on the informational hearing, but because the Petitioners were denied a contested case hearing with the possibilities for additional information which such a hearing presents. The injunction is continued until such time as the Department holds a contested case hearing and issues a new FEIS based on such hearing.
By the Court.The order of the circuit court is affirmed in part, reversed in part, and cause remanded to the circuit court with directions to remand to the Department for further proceedings consistent with this opinion.
LOUIS J. CECI, J. (concurring in part and dissenting in part).
I agree with the majority and the circuit court that the Milwaukee Brewers Baseball Club, et al., had standing to challenge the adequacy of the Final Environmental Impact Statement (FEIS). I also agree that the FEIS must be reconsidered by the department of health and social services (DHSS). I therefore concur in that part of the result reached by the majority. I disagree, however, with the majority's conclusion that the FEIS need not include a consideration of alternative prison sites. I therefore dissent from that part of the majority's holding which does not remand the alternate-site issue to the circuit court, but rather decides as a matter of law that the DHSS need not consider alternative prison sites. I would direct the circuit *77 court to instruct the DHSS, before it rules on the adequacy of the FEIS, to consider alternative sites.
The FEIS at issue here did not consider alternative sites to the Menomonee Valley location, but rather limited itself "to the adequacy of the designated site and mitigation of adverse impacts...." FEIS, sec. 9 at 9-1. The Wisconsin Environmental Policy Act (WEPA) states in part that every recommendation which would significantly affect the quality of the human environment must include a detailed statement on "[a]lternatives to the proposed action." Section 1.11(2)(c)3, Stats. The majority's conclusion that the FEIS need not include a consideration of alternative prison sites is directly contrary to this express requirement of WEPA. The legislature reaffirmed its commitment to WEPA in the prison-siting legislation. 1983 Wis. Act 27, sec. 2020(32g)(b).
The majority holds that because the legislature specified the site for a new prison, it was reasonable for the DHSS not to consider sites other than the Menomonee Valley. At pages 74-75. I disagree. The task of considering alternative sites does not become either a futile or an empty exercise merely because the legislature has specifically designated a site.
The purpose of an FEIS is to allow an agency to critically examine the environmental consequences of a particular action. Majority opinion at 72, quoting from Wis. Environmental Decade v. Public Service Comm., 98 Wis. 2d 682, 690, 298 N.W.2d 205 (Ct. App. 1980). The examination of environmental consequences of a particular action is not an absolute consideration, but a relative one. The environmental impact of a particular action at a specific site is at least partially discerned by considering the impact in relation to other sites, even if *78 those other sites are not the object of specific legislative action. The identification of alternative sites would provide a more complete illumination and perspective of the environmental impact of the designated action on the specified site. Although an agency's obligation to consider alternatives in an FEIS may be "relatively narrow" when the legislature has specifically designated a project site,[1] I submit that the obligation is not entirely eliminated in such an instance. A specific site designation should not preclude a complete FEIS analysis under WEPA.
I also agree with the circuit court that the FEIS is inadequate because the FEIS failed to fully consider the irreversible and irretrievable commitments of resources arising as a result of the prison project, per sec. 1.11(2)(c)5, Stats. Accordingly, I respectfully dissent.
NOTES
[1] The Milwaukee Brewers play major league professional baseball games at Milwaukee County Stadium in Milwaukee County, located at 201 South 46th Street. Ray Jackson owns and operates Ray Jackson's Restaurant located at 5108 West Bluemound Road, Milwaukee, Wisconsin, five blocks north of I-94 and north of the Proposed prison site. Mr. Jackson resides at 332 North 50th Street, Milwaukee, Wisconsin.
[2] For a description of the steps taken to deal with this problem, see Fox, 112 Wis. 2d at 519-521.
[3] "46.05 Medium/maximum security prisons; medium security prison. (1)...

"(1o)(a) In addition to the institutions under sub. (1), the department shall establish a correctional institution located in Milwaukee in the area bounded on the north by highway I 94, on the south and west by the Menominee river and on the east by 35th street on property owned by the Milwaukee road railroad on March 28, 1983. The department may acquire additional land owned by the Milwaukee road railroad on March 28, 1983, on the west and south sides of and contiguous to the Menominee river. The department may proceed to acquire the property specified under this subsection, except that if s. 85.09 applies the department shall proceed in cooperation with the department of transportation under s. 85.09(4g)(b). The department shall not acquire any additional property for a correctional institution in the city of Milwaukee prior to January 1, 1985, unless the site is designated by the legislature by statute."
[4] Prior to the Department's decision on the FEIS, Petitioners challenged the constitutionality of several provisions of the Act in the Dane County Circuit Court, Hon. Angela B. Bartell, presiding. In a memorandum decision and order dated December 14, 1984, the circuit court held that the Petitioners had standing to challenge the constitutionality of the prison siting legislation, and that the prison siting legislation was constitutional. The court of appeals reversed the circuit court decision on June 18, 1985, holding that sec. 46.05(lo)(a), Stats., which designated the Menomonee Valley in Milwaukee as the prison site, was unconstitutional because it is a local bill and its enactment, as part of the budget bill, violated Wis. Const. art. IV, sec. 18. This court granted the Department's petition for review of the court of appeals' decision on September 13, 1985. That review is concerned with the constitutional challenges to the Act.
[5] "227.15 Judicial review; decision reviewable. Administrative decisions which adversely affect the substantial interests of any person, whether by action of inaction, whether affirmative or negative in form, are subject to review as provided in this chapter, except for the decisions of the department of revenue other than decisions relating to alcohol beverage permits issued under ch. 125, decisions of the department of employe trust funds, the commissioner of banking, the commissioner of credit unions, the commissioner of savings and loan, the board of state canvassers and those decisions of the department of industry, labor and human relations which are subject to review, prior to any judicial review, by the labor and industry review commission, and except as otherwise provided by law."

"227.16 Parties and proceedings for review. (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 shall be entitled to judicial review thereof as provided in this chapter.
"(a) Proceedings for review shall be instituted by serving a petition therefor personally or by certified mail upon the agency or one of its officials, and filing the petition in the office of the clerk of the circuit court for the county where the judicial review proceedings are to be held. Unless a rehearing is requested under s. 227.12, petitions for review under this paragraph shall be served and filed within 30 days after the service of the decision of the agency upon all parties under s. 227.11. If a rehearing is requested under s. 227.12, any party desiring judicial review shall serve and file a petition for review within 30 days after service of the order finally disposing of the application for rehearing, or within 30 days after the final disposition by operation of laws of any such application for rehearing. The 30-day period for serving and filing a petition under this paragraph commences on the day after personal service or mailing of the decision by the agency...."
[6] In Metro Edison, the issue was whether the Nuclear Regulatory Commission (NRC) must comply with NEPA when determining whether the petitioner, Metropolitan Edison, could resume operation of the Three Mile Island Unit One Nuclear Power Plant (TMI-1) after TMI-2 suffered a serious accident. Respondents, People against Nuclear Energy, (PANE), alleged that "restarting TMI-1 would cause both severe psychological health damage to persons living in the vicinity, and serious damage to the stability, cohesiveness, and well-being of the neighboring communities." Metro-Edison, 460 U.S. at 769. The court of appeals concluded that the NRC must consider the psychological health damage alleged by PANE because NEPA requires agencies to consider effects on health, and effects on psychological health are effects on health. In reversing, the Supreme Court held that NEPA was to be read to require a close causal relationship between the effect and a change in the physical environment. In Metro-Edison, the alleged psychological damages flowed directly from the risk of a nuclear accident, and not from a change in the physical environment. The element of risk, and its perception by PANE members lengthens the causal chain beyond the reach of NEPA. Metro-Edison, 460 U.S. at 775. Therefore, the NRC did not have to consider PANE'S contentions.
[7] "1.11 Governmental consideration of environmental impact. The legislature authorizes and directs that, to the fullest extent possible: ... (2) Except as provided in s. 145.022, all of the agencies of the state shall:

"(c) Include in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the United States council on environmental quality under P.L. 91-190, 42 U.S.C. 4331, by the responsible official on:
"1. The environmental impact of the proposed action; "2. Any adverse environmental effects which cannot be avoided should the proposal be implemented;
"3. Alternatives to the proposed action;
"4. The relationship between local short-term uses of man's environment and the maintenance and enhancement of longterm productivity; and
"5. Any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented;
"6. Such statement shall also contain details of the beneficial aspects of the proposed project, both short term and long term, and the economic advantages and disadvantages of the proposal."
[1] Majority opinion at 73, quoting Izaak Walton League of America v. Marsh, 655 F.2d 346, 372 (D.C. Cir. 1981).