COURT OF APPEALS
DECISION
DATED AND FILED

September 15, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2019AP299**
**2019AP534**
**STATE OF WISCONSIN**

**Cir. Ct. Nos.  2018CV178**
**2018CV2301**

**IN COURT OF APPEALS**
**DISTRICT I**

FRIENDS OF THE BLACK RIVER FOREST AND CLAUDIA BRICKS,

     PETITIONERS-APPELLANTS,

   V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES AND NATURAL RESOURCES BOARD,

     RESPONDENTS-RESPONDENTS,

KOHLER COMPANY,

     INTERVENOR-RESPONDENT.

FRIENDS OF THE BLACK RIVER FOREST AND CLAUDIA BRICKS,

     PLAINTIFFS-APPELLANTS,

   V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES AND NATURAL RESOURCES BOARD,

     DEFENDANTS-RESPONDENTS,

KOHLER COMPANY,

     INTERVENOR-RESPONDENT.

APPEALS from orders of the circuit court for Sheboygan and Dane Counties: EDWARD L. STENGEL and STEPHEN E. EHLKE, Judges. *Reversed and cause remanded.*

Before Blanchard, Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Friends of the Black River Forest and Claudia Bricks (collectively referred to herein as the Friends) appeal the dismissals of their challenges to a land exchange that took place between Kohler Company (Kohler) and the Wisconsin Department of Natural Resources (the Department).

¶2     On appeal, the Friends argue that the Sheboygan County Circuit Court erred in dismissing their WIS. STAT. ch. 227 (2017-18)[1] petition for judicial review for lack of standing and that the Dane County Circuit Court erred in dismissing their common law certiorari complaint under WIS. STAT. § 802.06(2)(a)10.

¶3     We conclude that the Friends have alleged an injury in their Amended Petition sufficient to meet the standing requirements of WIS. STAT. § 227.52 and WIS. STAT. § 227.53. We, therefore, reverse the decision of the Sheboygan County Circuit Court and remand for proceedings consistent with this opinion. We also conclude that the Dane County Circuit Court erred when it

_____

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

dismissed the common law certiorari complaint pursuant to WIS. STAT. § 802.06(2)(a)10., and, therefore, we reverse that decision of the Dane County Circuit Court and remand for proceedings consistent with this opinion.

## BACKGROUND

¶4      In 2014, Kohler announced a plan to build a golf course, clubhouse, and related facilities on property it owns to the north of Kohler-Andrae State Park (the Park).  In pursuit of these plans, Kohler approached the Department about a land exchange, and in 2017, the Department initiated a master planning procedure under WIS. ADMIN. CODE ch. NR 44 (through Sept. 2019) to consider Kohler's request.  The Natural Resources Board (the Board), which supervises the Department and is required to approve amendments to the master plans for state parks, approved the initiation of this master planning procedure at its June 27-28, 2017 meeting.

¶5      After months of consideration and negotiations with Kohler, the Department prepared a recommendation for the Board detailing a proposed land exchange in which Kohler would deed to the Department title to 9.5 acres of land located to the west of the Park in exchange for title to 4.59 acres of land inside the Park boundary, along with an easement over 1.88 acres of Park property.  Kohler would use the 4.59 acres for a maintenance facility and parking lot for the golf course, while it would use the 1.88 acre easement for public access to the golf

course.[2] The proposed land exchange also required Kohler to install a roundabout and other infrastructure at the Park's entrance.

¶6 Pursuant to the master planning procedure that had been started, the Department determined that the 4.59 acres was "no longer needed for the State's use for conservation purposes." The Board considered the Department's recommendation at its February 28, 2018 meeting and approved the exchange. At the time of the exchange, the master planning procedure was underway, but not yet complete.

¶7 The Friends filed a WIS. STAT. ch. 227 petition seeking judicial review of the land exchange in Sheboygan County Circuit Court on April 2, 2018. The Petition named the Department and the Board as respondents. Pursuant to a stipulation between the parties, the proceedings were stayed. However, Kohler moved to intervene, lift the stay, and dismiss the petition.[3] In support of its motion to dismiss the petition, Kohler argued that the Friends lacked standing, that the land exchange was not a "decision" subject to judicial review under ch. 227, and that the land exchange was a ministerial act that is unreviewable under ch. 227. The Department and the Board filed a brief in support of Kohler's motion to dismiss, arguing that the Friends failed to allege a protected interest and failed to allege that any injuries they had were recognized or protected by law. The Friends filed an Amended Petition.

---

[2] The 4.59 acres and the 1.88 acres of easement that would be conveyed by the Department to Kohler consists of areas of heavily wooded land, open sand dune formations, and interdunal wetlands. The land conveyed by Kohler to the Department consists of upland woodland, cropland, a home, and outbuildings.

[3] The circuit court granted Kohler's motion to intervene.

¶8 The Sheboygan County Circuit Court dismissed the Friends' Amended Petition on January 11, 2019, for failing to meet the standing requirements set out in WIS. STAT. § 227.52 and WIS. STAT. § 227.53. In its Memorandum Decision and Order dismissing the Amended Petition, the circuit court focused on whether the Friends had standing to seek judicial review of the land exchange, and did not address any other arguments raised by the motions to dismiss. The circuit court also restricted its standing analysis to the land exchange itself and did not consider "future development on the land in question."

¶9 As an alternative proceeding, the Friends filed a complaint on August 24, 2018, in Dane County Circuit Court naming the Board as the defendant. The action was styled as a common law certiorari action. Kohler again moved to intervene and dismiss the action or, in the alternative, to transfer venue to Sheboygan County. In its motion to dismiss, Kohler argued that the circuit court lacked jurisdiction as a result of the Board's sovereign immunity, that an action under WIS. STAT. ch. 227 was the exclusive manner of challenging the land exchange, that dismissal was required under WIS. STAT. § 802.06(2)(a)10. as a result of the action pending in Sheboygan County Circuit Court, and that the Friends lacked standing. The Board supported Kohler's motion to dismiss or, in the alternative, to transfer venue to the Sheboygan County Circuit Court. In its contemporaneous motion to dismiss, the Board argued that a petition for judicial review under WIS. STAT. ch. 227 was the exclusive means for challenging the land exchange, the Board has sovereign immunity, and that the Friends lacked standing.

¶10 The Dane County Circuit Court dismissed the Friends' common law certiorari complaint on January 25, 2019, citing WIS. STAT. § 802.06(2)(a)10. as the basis for the dismissal. It declined to address the additional arguments raised

by the motions to dismiss, but noted that "Sheboygan County is the proper place for this case to proceed."

¶11    The Friends appealed both dismissals.   The two cases were consolidated on appeal and venued in the Court of Appeals District I.

¶12    We conclude that the Friends have alleged sufficient facts to satisfy the standing inquiry.  We accordingly reverse and remand the Sheboygan County Circuit Court case for further proceedings.  Additionally, we conclude that the Dane County Circuit Court erred in dismissing the common law certiorari complaint pursuant to WIS. STAT. § 802.06(2)(a)10., after the Sheboygan County Circuit Court case had been dismissed.  We, therefore, reverse and remand the Dane County Circuit Court case for further proceedings.

## STANDARD OF REVIEW

¶13    "Our review of a motion to dismiss for lack of standing is *de novo*." *Town of Delavan v. City of Delavan, LLL*, 160 Wis. 2d 403, 410, 466 N.W.2d 227 (Ct. App. 1991).  We review a motion to dismiss a petition seeking judicial review of an agency decision by asking "whether a petition on its face states 'facts sufficient to show that the petitioner named therein is aggrieved and directly affected by the decision sought to be reviewed.'"    *Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n of Wis.* (*WED I*), 69 Wis. 2d 1, 8, 230 N.W.2d 243 (1975) (citation omitted).  In our review, we apply the "normal rules" relating to the review of a motion to dismiss,

> including but not limited to the rules that the allegations of the petition are assumed to be true; that the allegations are entitled to a liberal construction in favor of the petitioner; and that this court is not concerned with the ability of the petitioner to prove the facts alleged at trial.

*Id.* at 8-9.

¶14 "Whether dismissal is warranted under [WIS. STAT.] § 802.06(2)(a)10. is left to the circuit court's discretion. We will not reverse a discretionary determination unless the court erroneously exercised its discretion by making an error of law or failing to base its decision on the facts of record." *Payday Loan Store of Wis. Inc. v. Krueger*, 2013 WI App 25, ¶5, 346 Wis. 2d 237, 828 N.W.2d 587 (citation omitted).

## DISCUSSION

**I.** **The Friends have alleged facts in the Amended Petition sufficient to meet the standing requirement of WIS. STAT. § 227.52 and WIS. STAT. § 227.53**

¶15 Standing to seek judicial review of an administrative decision is governed by WIS. STAT. § 227.52, which permits judicial review of "[a]dministrative decisions which adversely affect the substantial interests of any person," and by WIS. STAT. § 227.53(1), which states, "Any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review of the decision …." "[B]oth sections essentially require the petitioner to show a direct effect on his [or her] legally protected interests." *WED I*, 69 Wis. 2d at 9. The standing inquiry under these sections is accordingly two fold. "The first step under the Wisconsin rule is to ascertain whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law." *Id.* at 10.

¶16 "[T]he law of standing in Wisconsin should not be construed narrowly or restrictively." *Id.* at 13. Indeed, in the environmental context, "[a]n allegation of injury in fact to aesthetic, conservational and recreational interests

has been readily accepted as sufficient to confer standing," and there is "a willingness to find that environmental interests are arguably within the zone of interest[] protected by virtually any statute related to environmental matters." *Id.* at 10-11. "The question of whether the injury alleged will result from the agency action in fact is a question to be determined on the merits, not on a motion to dismiss for lack of standing." *Id.* at 14.

¶17 In its Amended Petition for Judicial Review, the Friends alleged the following injuries:

> 24. [The Friends] are aggrieved by the Respondents' decisions to approve the land transaction. The Respondents' decision permanently eliminates [the Friends'] opportunity to use land within Kohler[-]Andrae State Park currently available to the public for recreation and enjoyment, which members of [the Friends] such as Ms. Felde and Ms. Bricks have used and enjoyed previously, and would continue to use and enjoy but for Respondents' decision.

> 25. The Respondents' decision will also reduce habitat for and populations of plants, birds, and animals that are currently enjoyed by [the Friends'] members such as Ms. Felde, as well as Ms. Bricks, harming their ability to observe wildlife and study nature in and around the park.

> 26. The Respondents' decision will impact and reduce enjoyment of other resources used by [the Friends'] members such as Ms. Felde, as well as Ms. Bricks, including areas of the park adjacent to the proposed road and maintenance facility. Construction of Kohler Co.'s facility will harm the aesthetics of these adjacent areas and impair [the Friends'] use and enjoyment of the areas for recreation and conservation.

> 27. [The Friends] and its members, including Ms. Felde and Ms. Bricks, will be affected by increased traffic and noise caused in and around the park by the Respondents' decision, as Kohler Co.'s project is constructed and operated.

> 28. [The Friends] and its members, including Ms. Felde and Ms. Bricks, are also interested in the

Respondents following required procedures for state park planning that ensure uses in the park are properly classified to avoid user conflicts and preserve recreational and scenic qualities, and are aggrieved by the Respondents' decision to follow procedures in this case.

As we interpret them, the injuries alleged by the Friends consist of recreational, aesthetic, and conservational injuries caused by the land exchange.[4]

¶18    In addressing whether the injuries pled by the Friends satisfy the standing analysis, the Sheboygan County Circuit Court "restrict[ed] its review to the land swap agreement between [the Department and the Board] and [Kohler]" and considered whether the land exchange by itself, regardless of the future events set in motion by the land exchange, would cause injury to the Friends. The circuit court said, "[The Friends] confuse the consequences of a transfer of ownership [of] property with the injuries they may sustain if the full project proposed by Kohler is approved by all governing bodies." In other words, the circuit court found that the Friends alleged injuries failed the standing test because the injuries were not caused directly as a result of the land exchange itself and dismissed the Amended Petition on that basis.

---

[4] The Friends' alleged injuries apply to Ms. Bricks individually and to members of the Friends. The Friends' associational standing is not being challenged in this appeal and is, therefore, not addressed. We assume, without deciding, that the Friends' satisfy associational standing. However, for the sake of completeness and as part of our *de novo* review of standing, we note that an organization meets the required associational standing "if it alleges facts sufficient to show that a member of the organization would have had standing to bring the action in his own name." *Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n of Wis.* (*WED I*), 69 Wis. 2d 1, 20, 230 N.W.2d 243 (1975). In its Amended Petition, the Friends have alleged injuries to its members who live, work, and engage in recreational activities in and around the Park and, accordingly, have alleged facts sufficient to meet the requirements of associational standing.

¶19    However, as we have previously recognized, "[i]njury alleged, which is remote in time or which will only occur as an end result of a sequence of events set in motion by the agency action challenged, can be a sufficiently direct result of the agency's decision to serve as a basis for standing." *WED I*, 69 Wis. 2d at 14. We, therefore, must look beyond the land exchange to the sequence of events that has been set in motion when analyzing whether the injuries alleged by the Friends in their Amended Petition satisfy the standing analysis.

¶20    As noted, Kohler negotiated a land exchange with the Department as part of its plans to construct a golf course. As such, the land exchange set in motion a sequence of events with Kohler's desired end result being the construction of the golf course. The Amended Petition alleges that the Department and the Board contemplated that the land exchange would be a step in Kohler's construction of a golf course. Furthermore, the Board's agenda from its February meeting in which it considered the Department's recommendation to exchange land with Kohler and the Department's background memorandum were attached to the Amended Petition. Both documents contemplate the construction of the golf course as the result of the land exchange, and as such, we do not see how the land exchange can be divorced from the end result of the construction of the golf course.

¶21    Kohler argues that the various potential sequence of events that could lead to the construction of the proposed golf course results in the alleged injuries being too conjectural and too hypothetical to satisfy the standing requirement. For this proposition, Kohler relies on *Fox v. DHSS*, 112 Wis. 2d 514, 334 N.W.2d 542 (1983). However, unlike the situation in *Fox*, the injuries alleged here do not "strain the imagination." *See id.* at 527. The petitioners in *Fox*, the Milwaukee County District Attorney and relatives of incarcerated

individuals, alleged that prisoners would suffer psychological injuries as a result of the decision to construct a new prison in Portage, far away from the prisoners' homes in Milwaukee County. *Id.* at 527, 532. This, the petitioners argued, would lead to an increase in recidivism and eventually harm the district attorney in his official capacity and the incarcerated individuals and their families. *Id.* at 526-27, 532. In response, our supreme court stated that the "presumed psychological effects" on inmates "are simply too remote to be considered 'direct injury' so as to confer standing." *Id.* at 527. The court further stated that the sequence of events leading from the agency decision to the presumed psychological injuries and then to the alleged injuries to the petitioners "strain[ed] the imagination." *Id.* As to the injuries alleged by the district attorney, the court stated, "His claimed injuries will result only if a sequence of increasingly unlikely events actually occur." *Id.* at 529. It likewise considered the injuries alleged by the family members as "too remote" to meet the direct injury requirement. *Id.* at 533.

¶22 We conclude that the injuries alleged by the Friends here are wholly unlike those alleged by the petitioners in *Fox*. Indeed, we fail to see how the injuries alleged by the Friends strain the imagination when the land exchange decision itself seems to have contemplated that Kohler would construct a golf course. We are at the motion to dismiss stage, and "the allegations in the petition are assumed to be true" and "the allegations are entitled to liberal construction in favor of [the Friends]." *See WED I*, 69 Wis. 2d at 8-9. Therefore, we must construe the alleged injuries liberally based on the face of the Amended Petition. Accordingly, based on the allegations made by the Friends it is not difficult to imagine that the Friends will no longer be able to use the remaining parkland for recreation without interference from traffic and noise in the area caused by the golf course and its patrons. Similarly, it is easy to imagine that interference to

11

habitats could interfere with the Friends ability to use the remaining parkland for recreational uses such as birding. Whether these injuries are likely to come to pass is a question to be resolved on the merits and not on a motion to dismiss. *See id.* at 14.

¶23 Moreover, the construction of the golf course and alleged resulting injuries seem even more likely to occur now that the land exchange has taken place because, following the land exchange, Kohler admitted that it began the process of obtaining permits and other necessary approvals for the construction of the golf course. We must, accordingly, consider the sequence of events set in motion by the land exchange and not just the land exchange itself.

¶24 With the proper scope in mind, we now consider whether the Friends have alleged injuries sufficient to meet the first step in the standing inquiry. We conclude that the Friends have alleged sufficient facts in its Amended Petition to satisfy the first step of the standing analysis.

¶25 The Friends have alleged recreational, aesthetic, and conservational injuries resulting from the anticipated (1) inability on their part to use the land conveyed to Kohler for recreation, (2) destruction of wildlife habitat, (3) impact of the golf course on remaining parkland, (4) increased traffic and noise, and (5) failure of the Department and the Board to follow the proper procedures when considering a conveyance of parkland.

¶26 "[T]he direct injury requirement[] has two components." *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 65, 387 N.W.2d 245 (1986). "First, the injury must not be hypothetical or conjectural." *Id.* "Second, there must be a close causal relationship between the alleged injury and a change in the physical environment." *Id.*

12

¶27     As we addressed above, we do not see the alleged injuries here as hypothetical or conjectural given that the land exchange itself contemplates the construction of the golf course. It is, therefore, not hypothetical or conjectural that the land exchange may cause the Friends to suffer the alleged recreational, aesthetic, and conservational injuries as a result of the golf course construction. Additionally, there is a close causal relationship between the alleged injuries to a change in the physical environment precipitated by the land exchange. While there will be other steps between the land exchange and the planned completion of the golf course, the land exchange has made those intervening steps possible and can be said to have a causal connection to the injuries alleged by the Friends.

¶28     Turning to the second step of the inquiry, we further conclude that the Friends have alleged injuries recognized by law and, therefore, satisfy the second step of the standing inquiry.[5]

¶29     The Friends alleged anticipated recreational, aesthetic, and conservational injuries that are environmental in nature, and the laws cited by the Friends for protection are themselves environmental in nature. In the Amended Petition, the Friends point to WIS. STAT. § 27.01(1), WIS. STAT. § 23.11, WIS. STAT. § 23.15, and the accompanying regulations found in WIS. ADMIN. CODE

_____

[5] The Friends argue that this court should not address the second step of the standing analysis because it was not considered by the Sheboygan County Circuit Court. However, we review a decision for lack of standing *de novo*, the parties have briefed the issue, and thus we consider it appropriate to reach the second step of the analysis. *See **Town of Delavan v. City of Delavan, LLL***, 160 Wis. 2d 403, 410, 466 N.W.2d 227 (Ct. App. 1991).

chs. NR 1 & 44.[6] We see the nature of these statutes and accompanying regulations as creating an environmental interest in the protection and regulation of Wisconsin's state parks, including the Kohler-Andrae State Park at the heart of the dispute here. *See Waste Mgmt. of Wis., Inc. v. DNR*, 144 Wis. 2d 499, 508, 424 N.W.2d 685 (1988).

¶30    WISCONSIN STAT. § 27.01(1) states:

> It is declared to be the policy of the legislature to acquire, improve, preserve and administer a system of areas to be known as the state parks of Wisconsin. The purpose of the state parks is to provide areas for public recreation and for public education in conservation and nature study. An area may qualify as a state park by reason of its scenery, its plants and wildlife, or its historical, archaeological or geological interest. The department shall be responsible for the selection of a balanced system of state park areas and for the acquisition, development and administration of the state parks.

WISCONSIN STAT. § 23.11 further states, "[The Department] shall have and take the general care, protection and supervision of all state parks …." Last, WIS. STAT. § 23.15(1) says, "The natural resources board may sell, at public or private sale, lands and structures owned by the state under the jurisdiction of the department of natural resources, … when the natural resources board determines that the lands are no longer necessary for the state's use for conservation purposes …." Accompanying regulations found in WIS. ADMIN. CODE chs. NR 1 and 44 are also intended to serve as the agency rules in carrying out the statutory duties to

---

[6] Kohler argues that the administrative code provisions that the Friends point to cannot create a legally protected interest. We disagree. A rule can create legally protectable interests. *See Chenequa Land Conservancy, Inc. v. Village of Hartland*, 2004 WI App 144, ¶29, 275 Wis. 2d 533, 685 N.W.2d 573 (rejecting reliance on an agency manual because the manual was not a rule with the force of law behind it). As such, we consider whether the administrative code provisions cited by the Friends create a protectable interest.

do such things as take general care of the state parks and preserve and administer the state parks for public recreation and public education.

¶31     As noted, the Friends alleged anticipated recreational, aesthetic, and conservational injuries that are environmental in nature.  The statutes and accompanying regulations mentioned above recognize those injuries under the law.  The Friends have accordingly alleged an interest recognized by law to meet the second step of the standing inquiry.

¶32     In sum, we conclude that the allegations in the Friends' Amended Petition are sufficient to satisfy the standing requirements of WIS. STAT. § 227.52 and WIS. STAT. § 227.53.  We, therefore, reverse the decision of the Sheboygan County Circuit Court dismissing the Friends' Amended Petition for lack of standing.

**II.     The Friends' common law certiorari action was improperly dismissed on the basis of WIS. STAT. § 802.06(2)(a)10**

¶33     The Friends argue that there was no longer another action pending between the parties once the Sheboygan County case was dismissed and, therefore, dismissal by the Dane County Circuit Court was no longer appropriate under WIS. STAT. § 802.06(2)(a)10.  We agree, and we conclude that the Friends' common law certiorari action was improperly dismissed for this reason.

¶34     A circuit court may dismiss "[a]nother action pending between the same parties for the same cause."  WIS. STAT. § 802.06(2)(a)10.  As the statute states, dismissal for this reason requires that "the moving party must prove the existence of:  (1) another pending action; (2) between the same parties; (3) for the same cause."  *Payday Loan Store*, 346 Wis. 2d 237, ¶6.

15

¶35 As the first element plainly states, there must be another pending action for WIS. STAT. § 802.06(2)(a)10. to apply. However, in this case the other pending action in Sheboygan County was clearly dismissed at the time the Dane County Circuit Court rendered its decision. The Sheboygan County Circuit Court dismissed the petition filed by the Friends on January 11, 2019, and the Dane County Circuit Court rendered its oral ruling dismissing the Friends' common law certiorari complaint on January 25, 2019. There was, therefore, no other pending action to meet the first element for dismissal under WIS. STAT. § 802.06(2)(a)10., and we conclude that the circuit court erred in dismissing this action under WIS. STAT. § 802.06(2)(a)10. when no other pending action existed at that time. Accordingly, we reverse the dismissal of the Friends' common law certiorari complaint.

## CONCLUSION

¶36 We conclude that the Friends have alleged sufficient facts in the Amended Petition to meet the standing requirements of WIS. STAT. § 227.52 and WIS. STAT. § 227.53. We also conclude that it was an erroneous exercise of discretion for the Dane County Circuit Court to dismiss the Friends' common law certiorari complaint on the basis of WIS. STAT. § 802.06(2)(a)10. We, therefore, reverse the dismissals and remand for proceedings consistent with this opinion.

*By the Court*.—Orders reversed and causes remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16