# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP823**

Cir. Ct. No. 2023CV207

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

ST. CROIX SCENIC COALITION, INC., TYLER NORENBERG,
ELIZABETH KREMSER, EARL WISEMAN, DEBORAH BOREK,
THOMAS CARAVELLI, PETER PAIDAR, VICTORIA NELSON AND
THOMAS KILLILEA,

    PETITIONERS-RESPONDENTS,

  V.

VILLAGE OF OSCEOLA AND VILLAGE OF OSCEOLA BOARD OF
TRUSTEES,

    RESPONDENTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Reversed and cause remanded with directions*.

Before Stark P.J., Hruz and Gill, JJ.

¶1    GILL, J.[1] The Village of Osceola and its Board of Trustees (collectively, the "Village") appeal a decision of the circuit court granting in part St. Croix Scenic Coalition, Inc.'s petition for certiorari review of the Village's decision to approve final site plans for a particular residential development and remanding the matter to the Village for further proceedings.[2]

¶2    On appeal, the Village asserts that the Coalition failed to plead sufficient facts demonstrating that it has standing under WIS. STAT. § 781.10 to seek certiorari review of the Village's decision. Specifically, the parties dispute whether the Coalition sufficiently demonstrated that the individual members sustained "actual damages or will imminently sustain actual damages that are personal to the person and distinct from damages that impact the public generally" "as a result of" the Village's decision. *See* § 781.10(2)(c)3.

¶3    We conclude that the Coalition failed to allege sufficient facts to meet the standing requirement in WIS. STAT. § 781.10(2)(c)3. Specifically, the Coalition alleged its members merely faced the possibility of future harm of a type that would affect the public generally rather than the required then-existing individual injury or reasonably certain future individual injury resulting from the local governing body's decision to approve the application. We therefore reverse and remand for the circuit court to dismiss the certiorari petition.

---

[1] This opinion has been issued within ninety days after the Village of Osceola's reply brief was filed. *See* WIS. STAT. RULE 809.108(1), (4) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] St. Croix Scenic Coalition, Inc., which is a non-profit charitable organization "dedicated to protecting the scenic character of the St. Croix Valley landscape," filed the present action along with eight individual members of the Coalition: Tyler Norenberg, Elizabeth Kremser, Earl Wiseman, Deborah Borek, Thomas Caravelli, Peter Paidar, Victoria Nelson, and Thomas Killilea. We refer to the Coalition and these members collectively as the "Coalition."

**BACKGROUND**

¶4    The Osceola Bluffs development project ("project" or "development") is a proposal to build a mixed-use commercial and residential property on the bank of the St. Croix River in the location of an abandoned hospital.  If completed, the property would be three stories tall and include ninety-nine apartment units, two commercial spaces, and 177 parking spaces.  In July 2023, the Village approved the developer's final site plans for the project.

¶5    The Coalition filed an amended petition for certiorari review under WIS. STAT. § 781.10 challenging the validity of the Village's approval for the project.  The Coalition argued that the Village acted arbitrarily, oppressively, unreasonably, and unlawfully in several respects related to its decision.  Accordingly, the Coalition requested that the circuit court reverse the Village's decision.  The Coalition also moved for a temporary restraining order preventing the project from moving forward during the pendency of the action.

¶6    The Village responded to the request for a temporary restraining order by arguing, among other things, that the Coalition lacked standing to bring the certiorari action because it failed to meet any of the requirements in WIS. STAT. § 781.10(2)(c).  At a hearing on the motion, the circuit court concluded that the Coalition had standing.  The court also granted the Coalition's motion for a temporary restraining order.

¶7    Ultimately, the circuit court granted relief with respect to the Coalition's petition for certiorari in part and reversed the Village's July 2023 decision.  Specifically, the court concluded that the Village's decision was unreasonable because it violated a Village of Osceola ordinance and Wisconsin administrative code regulations.  The court remanded the case back to the Village

to "further review compliance with the requirements of" those provisions.[3]  The Village now appeals.

## DISCUSSION

¶8      As discussed, the Coalition sought certiorari review of the Village's decision pursuant to WIS. STAT. § 781.10.  On certiorari review, our inquiry is limited to:

> (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶41, 362 Wis. 2d 290, 865 N.W.2d 162 (citation omitted).

¶9      First, however, we must determine whether the Coalition has met the specific requirements for standing under WIS. STAT. § 781.10(2)(c).  "Standing presents a question of law for our de novo review." *Metropolitan Builders Assoc. of Greater Milwaukee v. Village of Germantown*, 2005 WI App 103, ¶12, 282 Wis. 2d 458, 698 N.W.2d 301.  To resolve the standing issue in this case, we must interpret and apply statutory provisions, which also present questions of law. *See Clean Wis., Inc. v. DNR*, 2021 WI 71, ¶15, 398 Wis. 2d 386, 961 N.W.2d 346.  "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel.*

---

[3] The circuit court also ordered that the injunction remain in place to allow the parties to appeal its decision.

*Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶45. Because we conclude that the Coalition lacks standing pursuant to the relevant statutory provisions, we need not reach the remaining issues addressed by the circuit court.

### A. Forfeiture of the Village's standing argument

¶10 The Coalition argues that we need not address the standing issue because the Village forfeited its challenge to the Coalition's standing. The Coalition asserts that the Village was required to bring a motion to dismiss for lack of standing or, alternatively, to argue standing in its brief in opposition to the certiorari petition. "As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal." *Town of Mentor v. State*, 2021 WI App 85, ¶46, 400 Wis. 2d 138, 968 N.W.2d 716 (citation omitted). The forfeiture rule prevents a circuit court from being "blindside[d]" with reversal based on a theory which it was not presented with. *Id.*, ¶51 (citation omitted). It also enables a "circuit court to avoid or correct any error as it comes up" and "gives the parties and the circuit court notice of an issue and a fair opportunity to address the objection." *Id.*, ¶46 (citation omitted).

¶11 In this case, the Village raised the issue of standing in its response brief to the Coalition's motion for temporary relief pending certiorari review. The Village's brief contained three pages in which it argued that the Coalition did not meet the standing requirements in WIS. STAT. § 781.10(2)(c). Moreover, at the hearing on that motion, the Village again argued that the Coalition must "have had actual damages in order to establish the right to bring this claim. [The Coalition

5

has not] done it. And [the Coalition] had to have done it in the initial pleading. That's what's required under [§] 781.10. On that basis alone, this entire claim fails." The circuit court then issued an oral ruling concluding that the Coalition had standing to challenge the Village's decision to approve the site plans for the proposed project.

¶12 Accordingly, the circuit court and the parties were clearly given notice of the standing issue; indeed, the parties argued the matter. The Coalition cites no authority for the proposition that, given the foregoing facts, the Village was required to again raise the standing issue in a motion to dismiss for lack of standing or in its brief in opposition to the certiorari petition. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

¶13 The Coalition also asserts that the Village was required, but failed, to raise the standing issue a second time following the circuit court's oral ruling because the court stated, "*for purposes of today*, there is standing." (Emphasis added.) The Coalition overreads the import of this statement. We agree with the Village that there would have been little reason to raise a second challenge to standing after the court made a ruling applying the standard in WIS. STAT. § 781.10(2)(c). Regardless, forfeiture is a rule of judicial administration, and we may disregard the rule and address the merits of an issue. *See **Town of Mentor***, 400 Wis. 2d 138, ¶48. As noted above, the standing issue was fully briefed and argued by both parties prior to the court's ruling. However, even if the issue was forfeited, we would address the merits of the Coalition's standing.

B. Standing under WIS. STAT. § 781.10

¶14    In June 2023, the Wisconsin legislature established a new, exclusive form of certiorari review for any final decision of a "political subdivision on an application for" "a permit or authorization for building, zoning, driveway, stormwater, or other activity related to residential development." *See* 2023 Wis. Act 16, § 20; WIS. STAT. § 781.10(1), (2)(a). "Political subdivision" "means a city, village, town, or county or a board of appeals or board of adjustment," § 781.10(1)(b), and "[r]esidential development" "means the development or redevelopment of land or buildings for the primary purpose of providing housing," § 781.10(1)(c).

¶15    WISCONSIN STAT. § 781.10 limits who may file an action for certiorari, stating, in pertinent part, that an action "may be filed only by any of the following":

> 3. A person that, as a result of the final decision on the application for an approval, *sustains actual damages or will imminently sustain actual damages that are personal to the person and distinct from damages that impact the public generally*. A person under this subdivision may not seek review under this section unless, prior to the final decision on the approval, the person provided a statement in writing on the approval to the political subdivision or agency of the political subdivision or appeared and provided an oral statement at a public proceeding held by the political subdivision or agency of the political subdivision at which the approval was considered.
>
> 4. A person, other than an individual, that satisfies all of the following conditions:
>
>> a. The person has as a member, partner, or stockholder at least one person described under subd. … 3.
>>
>> b. The person was not organized or incorporated in response to the application.

Sec. 781.10(2)(c) (emphasis added). "The person seeking review under this section shall file pleadings" which "shall specify facts demonstrating that the person has standing under par. (c)." Sec. 781.10(2)(d)1.

¶16 Our standing analysis is therefore limited to whether the interests asserted by the Coalition, in its pleadings, are "legally protectable" under WIS. STAT. § 781.10(2)(c). *See Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 2011 WI 36, ¶¶43, 54-56, 333 Wis. 2d 402, 797 N.W.2d 789 (stating that a legally protectable interest "means interests protected by a statute or constitutional provision" that governs standing); *Friends of the Black River Forest v. Kohler Co.*, 2022 WI 52, ¶¶28-30 & n.13, 402 Wis. 2d 587, 977 N.W.2d 342 (applying the "legally protectable" test to a petitioner's challenge under WIS. STAT. ch. 227). We construe pleadings liberally "as to do substantial justice." WIS. STAT. § 802.02(6).

¶17 On appeal, the Coalition asserts that it sufficiently pled allegations that satisfied the requirements of both WIS. STAT. § 781.10(2)(c)3. and 4.[4] The parties focus their arguments on whether the Coalition sufficiently pled allegations to meet the first clause in § 781.10(2)(c)3.—namely, "A person that, as a result of the final decision on the application for an approval, sustains actual damages or

---

[4] The Village concedes that the Coalition was not organized or incorporated in response to the application and that, prior to the final decision, the Coalition's members all submitted written statements to the Village on the approval and/or appeared and provided an oral statement at a Village public proceeding at which the approval was considered.

The Coalition improperly cites an unpublished per curiam opinion as authority in violation of WIS. STAT. RULE 809.23(3). Under RULE 809.23(3)(a), "[a]n unpublished opinion may not be cited in any court of this state as precedent or authority … except as provided in par. (b)," which pertains to authored opinions. RULE 809.23(3)(a), (b). A per curiam opinion is not an authored opinion. We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

will imminently sustain actual damages that are personal to the person and distinct from damages that impact the public generally."

¶18    "[A]ctual damages" and "imminently sustain actual damages" are not defined by statute. Using the common and accepted meanings, however, it is clear that a petitioner under WIS. STAT. § 781.10(2)(c)3. must experience a real, then-existing, injury or must reasonably be facing such injury in the near future as a result of the local governing body's decision to approve an application. *See Kalal*, 271 Wis. 2d 633, ¶53; *Actual*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/actual (last visited Oct. 30, 2024); *Imminent*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/imminent (last visited Oct. 30, 2024).

¶19    This conclusion is supported by our state supreme court's analysis in the context of statutes of limitations for torts. The court has held that "[i]n the context of deciding when a claim accrues for purposes of the statute of limitations, … a tort claim is not capable of present enforcement (and therefore does not accrue) unless the plaintiff has suffered *actual damage*." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶17, 270 Wis. 2d 146, 677 N.W.2d 233 (emphasis added). Actual damage in this context is defined as "harm that has already occurred or is 'reasonably certain' to occur in the future. Actual damage is not the mere possibility of future harm." *Id.* (citation omitted). Reasonably certain means "reasonably probable," not "merely possible." *Hennekens v. Hoerl*, 160 Wis. 2d 144, 166, 465 N.W.2d 812 (1991) (emphasis omitted; citation omitted). "Probable" is synonymous with "imminent." *Probable*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/probable (last visited Oct. 30, 2024).

¶20 "Monetary loss is not the only form of actual damage. One form of actual damage is injury to a legal interest or loss of a legal right." *Hennekens*, 160 Wis. 2d at 153-54. In addition, "allegations of injury to aesthetic, conservational, recreational, health and safety interests will confer standing so long as the injury is caused by a change in the physical environment." *See Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 64-65, 387 N.W.2d 245 (1986) (determining whether a petitioner had standing under WIS. STAT. ch. 227).[5] However, for purposes of WIS. STAT. § 781.10(2)(c)3. (as opposed to standing in general), the actual or imminent actual damages must be "personal to the person and distinct from damages that impact the public generally." *See* WIS. STAT. § 781.10(2)(c)3.

¶21 The Coalition's amended petition for certiorari included statements regarding each of the eight members who joined in this action. The petition alleged that each of the eight members owns property near the project's proposed development site. According to the petition, seven of the members "believe" that the proposed development will decrease their property values if completed, and many expressed concerns that the project will negatively impact their enjoyment of their properties. Some of the members also expressed their beliefs that the project will increase traffic and parking issues near their residences and "impact … the utilities infrastructure." The petition stated that Thomas Killilea

---

[5] WISCONSIN STAT. § 781.10(2)(c)3. does not confer standing upon a party using the same language as WIS. STAT. §§ 227.52 and 227.53. The latter statutes permit judicial review of "[a]dministrative decisions which adversely affect the substantial interests of any person" if that person is "aggrieved by" such a decision. *See* §§ 227.52 and 227.53(1). Nonetheless, we find *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 64-65, 387 N.W.2d 245 (1986), persuasive, and we conclude injuries to aesthetic, conservational, recreational, health and safety interests can constitute actual or imminent damages.

has "concerns" that he will have issues accessing one of his two residences near the proposed development. The petition alleged that most of the members believe the project will negatively impact the natural and scenic qualities of the St. Croix River that they enjoy, and some expressed concern that the finished development will be visible from the river. Moreover, some members expressed concern that their taxes may increase, and one member stated he was concerned about pollution.

¶22 The amended petition also stated that Tyler Norenberg, specifically, owns property "beneath the location" of the proposed development. In an affidavit, submitted after the amended petition was filed, Norenberg stated that he listed his property for sale because he "was fearful of the impact of a large … apartment building including a bar and restaurant with balconies looking down on [his] property and associated noise and light pollution coming down the hill."[6] Further, Norenberg stated that "[t]wo potential buyers withdrew their full-price interest in [his property] after" the proposed development "became public." Norenberg commented that he received one "bona fide offer" for his property, which was $200,000 lower than his desired listing price. In addition, Norenberg stated that he is "concerned about the retention ponds that will be built above [his] property." He expressed concern that "overflow from," "or a failure of," the larger of the retention ponds "would damage or destroy" his property "with a potential landslide." Norenberg cited "reliable information and belief by

---

[6] The parties disagree over whether Norenberg's affidavit is a "pleading[]" as that term is used in WIS. STAT. § 781.10(2)(d)1. The Village argues that the affidavit is not a pleading because it was not filed with the amended petition for certiorari. We will assume, without deciding, that the affidavit is reviewable for purposes of the standing analysis in this case.

the DNR" that the "proposed retention ponds constructed right up to the bluff line have increased chance of failure."

¶23    We begin our analysis with the amended petition.  We first note that many of the concerns raised in the petition relate to issues that are not "personal" or "distinct from damages that impact the public generally."  *See* WIS. STAT. § 781.10(2)(c)3.  These include members' concerns with:  the negative impact of the finished development on the natural and scenic qualities of the St. Croix River, including questions about whether the development will be visible from the water; the impact on general enjoyment of the St. Croix River; and the possible pollution of the river.  Contrary to the Coalition's assertion, the fact that the members may frequent the river "more than a random member of the public" does not render the alleged damage "personal" to them.  *See id.*  Similarly, the members' concerns about public parking issues and increased traffic are alleged damages that would "impact the public generally."  *See id.*  The same is true regarding concerns surrounding taxation and infrastructure.

¶24    In addition, the members' allegations regarding increased congestion with respect to parking and traffic, increased property taxes, infrastructure concerns, and diminished property values appear from the pleadings to be based entirely on their generalized "belief."  The members cite no evidence in their pleadings supporting any of the above claims.  These unsupported allegations are insufficient to meet the statutory standard; actual sustained damage is not the mere possibility of future harm.  *See **Tietsworth***, 270 Wis. 2d 146, ¶17.  Nor is the belief that the completed development may cause any of the above issues an "imminent" consequence—rather, it is a possibility.  *See id.*

¶25 With respect to property values, none of the statements in the petition articulate with specificity why the finished development will decrease property values, and the Coalition provides no appraisals in support of its position. The pleadings are particularly deficient in this regard because the proposed development site's location is an abandoned and dilapidated hospital, which site the Village notes "has seen constant vandalism, a variety of animals living in and around the vacant facility, and [is] a haven for drug and alcohol use." As the Village argues, "[a]ny improvement to the site is … more likely to increase property values in the area."

¶26 The Coalition contends that any reference to a member's concern about his or her property diminishing in value is sufficient to confer standing under the facts of this case. In support of this argument, the Coalition cites *Arneson v. Arneson*, 120 Wis. 2d 236, 252, 355 N.W.2d 16 (Ct. App. 1984), in which this court held that "an owner is competent to give opinion evidence as to value of his [or her] own property." Assuming without deciding that *Arneson* can be appropriately applied to the case at hand, a member's mere statement that his or her property value may decline due to the proposed development, without more, fails to demonstrate the member has standing. The amended petition failed to include any evidence regarding the members' property values or other evidence showing that their property values faced imminent reduction as a result of the proposed development.

¶27 Norenberg's affidavit contains more detail than the pleadings regarding his claim that the proposed development will reduce the value of his property. However, we conclude that it too fails to satisfy the standing requirements in WIS. STAT. § 781.10(2)(c)3. Notably, the affidavit lacks specificity as to the details surrounding the "full-price interest" in Norenberg's

property and the offer, including, but not limited to: whether the property's potential buyers were aware of the proposed development at the time they demonstrated their "interest" or made an offer; whether the potential buyers who demonstrated a full-price interest withdrew that interest because of the development; the original listing price of the property; the fair market value of the property; and any comparable sales in the area. In other words, the affidavit lacks sufficient information to conclude that the property diminished in value or that it was reasonably probable that the property value would diminish due to the proposed development—i.e., that Norenberg sustained actual damages or was likely to sustain such damages in the near future. We also note that "full-price interest" in a property does not equate to an offer to purchase. Regarding the retention ponds, the affidavit offers only speculative concerns that a "potential landslide" could occur. This concern, too, is not "imminent"—it is a possibility. *See Tietsworth*, 270 Wis. 2d 146, ¶17.

¶28 Lastly, the Coalition asserts that the allegations contained in its pleadings are sufficient because "[n]othing in WIS. STAT. § 781.10 changes the general pleading standard that a petition must only contain a short and plain statement of the facts and is to be liberally construed so as to do substantial justice." *See* WIS. STAT. § 802.02(1)(a). The Coalition asserts that § 781.10 does not require it to "prove actual damages in order to sufficiently allege standing." However, this argument ignores § 781.10's dictate that the "pleadings shall specify facts *demonstrating* that the person has standing under par. (c)." Sec. 781.10(2)(d)1. (emphasis added). We have liberally interpreted the Coalition's pleadings as required under § 802.02(6) and, for the reasons already explained, the pleadings fail to meet the standing requirements in § 781.10.

**CONCLUSION**

¶29 The legislature has defined who may bring a certiorari action challenging a local governing body's residential development decisions by limiting standing to the situations set forth in WIS. STAT. § 781.10(2)(c). As is relevant to this case, a petitioner must demonstrate that he or she sustained "actual damages or will imminently sustain actual damages" "as a result of the final decision on the application for approval." Sec. 781.10(2)(c)3.

¶30 Here, the Coalition failed to plead sufficient facts to have standing as it failed to allege real, then-existing, injuries to its individual members, or that the individual members reasonably faced such injury in the near future as a result of the Village's decision to approve the residential development application. The alleged mere possibility of future harm, and harm that is factually indistinguishable from damages that impact the public generally, was insufficient to meet this standard. Therefore, we reverse the circuit court's decision and remand for the court to dismiss the certiorari petition.

*By the Court.*—Order reversed and cause remanded with directions.

Recommended for publication in the official reports.